## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOUG SOMBKE, on behalf<br>of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br>MONSANTO COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 07-122-SLR<br>)<br>)<br>)<br>) |
| CENTURY ACRES, INC., on behalf<br>of itself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONSANTO COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 07-123-SLR<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT MONSANTO COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant

Monsanto Company ("Monsanto") moves this Court to dismiss Plaintiffs' respective

Complaints in the above-captioned actions for failure to state a claim upon which relief

can be granted. Because the Complaints in the two cases are nearly identical and are

subject to dismissal on the same grounds, and for the convenience of the Court, a single

motion to dismiss is being filed (in each civil action). In support of its motion to dismiss,

Monsanto states as follows:

**NATURE AND STAGE OF THE PROCEEDINGS**

On February 27, 2007, Plaintiffs Doug Sombke and Century Acres, Inc. filed

these putative class actions against Monsanto. (C.A. Nos. 07-122-SLR and 07-123-SLR).

Plaintiffs' Complaints largely replicate complaints by the same counsel in two related

actions, *Pullen Seeds and Soil v. Monsanto Co.*, C.A. No. 06-599-SLR and *Wade Farms*

*v. Monsanto Co.*, C.A. No. 06-600-SLR, except that plaintiffs purport to represent

farmers from different states than the plaintiffs in *Pullen Seeds* and *Wade Farms*.[1]

Defendant Monsanto has moved to dismiss *Pullen Seeds* and *Wade Farms*

because the plaintiffs' technology agreements with Monsanto designated St. Louis,

Missouri as the exclusive forum for the lawsuits. Plaintiffs here executed the same

technology license agreements containing the same forum selection clause. Their claims,

therefore, also should be dismissed.

**ARGUMENT**

As reflected in the attached chart, Exhibit A hereto, the material allegations in

these cases are identical to those in *Pullen Seeds* and *Wade Farms*. Given the parallel

complaints filed by the same counsel, and to avoid repetitive pleadings, Monsanto

incorporates by reference its Memorandum in Support of its Motions to Dismiss in

*Pullen Seeds* and *Wade Farms,* filed on November 20, 2006 and its Reply memorandum

filed on January 12, 2007. (*See* Exs. B and C hereto). As set forth in more the detail in

those briefs, this case should be dismissed because:

---

[1]    The allegations also track almost verbatim those in *Am. Corn Growers Ass'n v.*
*Monsanto Co.*, C.A. No. 07-100-SLR, brought by the same counsel, for an association
purportedly suing on behalf of its members.

1.   Plaintiffs sued in the wrong forum.  Plaintiffs claim they are "licensed grower[s]" of crops containing Monsanto's glyphosate-tolerant seed traits.  (Sombke/Century Acres Compls. ¶ 17).  Under their license agreements with Monsanto, which allowed them to use seed with those patented traits, St. Louis is the exclusive forum for all claims "arising out of or connected in any way" with the agreements or "the use of the seed or the Monsanto technologies."  (*See* Ex. D hereto).

2.   The forum selection clause in Plaintiffs' license agreements is valid and enforceable.  *See, e.g.*, *Blades v. Monsanto.*, No. 00-CV-4034-DHR, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001); *Massey v. Monsanto.*, No. 299-CV-218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000).

3.   Plaintiffs' claims fall within the forum selection clause.  Plaintiffs assert that Monsanto used the very licenses executed by Plaintiffs to restrain trade and monopolize the market for glyphosate.  (Sombke/Century Acres Compls. ¶¶ 86-90 (attacking technology agreement)).

4.   In this Circuit, breach of a forum agreement warrants dismissal.  *Salovaara v. Jackson Nat'l Life Ins.*, 246 F.3d 289, 298 (3d Cir. 2001).  The Court thus should dismiss the Complaints without prejudice to re-filing in St. Louis, where 13 cases advancing similar claims are pending.

## CONCLUSION

For the foregoing reasons and those advanced in *Pullen Seeds* and *Wade*

*Farms,* the Court should dismiss the Complaints.

Respectfully submitted,

OF COUNSEL:                                                      POTTER ANDERSON & CORROON LLP

Robert N. Weiner
Anthony J. Franze                                               By:  /s/ David E. Moore
ARNOLD & PORTER LLP                                                  Richard Horwitz (#2246)
555 Twelfth Street, N.W.                                            David E. Moore (#3938)
Washington, D.C. 20004-1206                                         1313 N. Market Street
(202) 942-5000                                                      Hercules Plaza, 6th Floor
                                                                    P.O. Box 951
Peter E. Moll                                                       Wilmington, DE 19801
John J. Rosenthal                                                   (302) 984-6000
Timothy T. Finley                                                   rhorwitz@potteranderson.com
HOWREY LLP                                                          dmoore@potteranderson.com
1299 Pennsylvania Ave., N.W.
Washington, DC 20004                                            *Attorneys for Defendant*
(202) 783-0800                                                 *Monsanto Company*

Dated:  March 20, 2007


784580 / 30803

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 20, 2007, the attached document

was hand delivered to the following persons and was electronically filed with the Clerk of

the Court using CM/ECF which will send notification to the registered attorney(s) of

record that the document has been filed and is available for viewing and downloading:

Jeffrey S. Goddess
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
jgoddess@rmgglaw.com

I hereby certify that on March 20, 2007, I have Electronically Mailed the

documents to the following:

Bruce E. Gerstein
Noah H. Silverman
Joseph Opper
Garwin Gerstein & Fisher, LLP
1501 Broadway, Suite 1416
New York, NY 10036
bgerstein@garwingerstein.com
nsilverman@garwingerstein.com
jopper@garwingerstein.com

Adam M. Moskowitz
T. Tucker Ronzetti
Michael S. Olin
David M. Buckner
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
amm@kttlaw.com
tr@kttlaw.com
mso@kttlaw.com
dmb@kttlaw.com

Daniel Berger
Eric Cramer
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
danberger@bm.net
ecramer@bm.net

Michael Miller
Law Office of Michael Miller
926 Chulie Drive
San Antonio, TX 78216
mdm@mdmlaw.net

Lance A. Harke                            John Gregory Odom
Harke & Clasby, LLP                       Stuart E. Des Roches
155 S. Miami Avenue, Suite 600            Charles F. Zimmer, II
Miami, FL  33130                          Odom & Des Roches, LLP
lharke@harkeclasby.com                    650 Poydras Street
                                          Suite 2020
                                          New Orleans, LA  70130
                                          jodom@odrlaw.com
                                          stuart@odrlaw.com
                                          czimmer@odrlaw.com

     I hereby certify that on March 20, 2007, I have sent the documents via U.S. Mail

to the following:

David P. Smith
W. Ross Foote
Percy, Smith & Foote, LLP
720 Murray Street
P.O. Box 1632
Alexandria, LA  71309

                            */s/ David E. Moore*
                            Richard L. Horwitz
                            David E. Moore
                            Potter Anderson & Corroon LLP
                            Hercules Plaza – Sixth Floor
                            1313 North Market Street
                            Wilmington, DE  19899-0951
                            (302) 984-6000
                            rhorwitz@potteranderson.com
                            dmoore@potteranderson.com

784606 / 30803

# Exhibit A

**CHART OF IDENTICAL OR MATERIALLY IDENTICAL ALLEGATIONS IN
SOMBKE/CENTURY ACRES COMPLAINTS AND
PULLEN SEEDS/WADE FARMS/ACGA COMPLAINTS**

| Sombke/Century Acres Paragraph: | Identical or Materially Identical Paragraphs in Wade Farms | Identical or Materially Identical Paragraphs in Pullen Seeds | Identical or Materially Identical Paragraphs in ACGA |
|---|---|---|---|
| Section Caption in All Five Cases: Nature of Case | | | |
| 1 | 1 | 1 | 1 |
| 2 | 2 (Plaintiff specific) | 2 (Plaintiff specific) | 2 (Plaintiff specific) |
| 3 | – | – | 3 (Plaintiff specific) |
| 4 | 3 | 3 | 4 |
| 5 | 4 | 4 | 5 |
| 6 | 5 | 5 | 6 |
| 7 | 6 | 6 | 7 |
| 8 | 7 | 7 | 8 |
| 9 | 8 | 8 | 9 |
| 10 | 9 | 9 | 10 |
| 11 | 10 (State specific) | 10 (State specific) | 11 (No state claims) |
| Section Caption in All Five Cases: Jurisdiction and Venue | | | |
| 12 | 11 | 11 | 12 |
| 13 | 12 | 12 | 13 |
| 14 | 13 | 13 | 14 |
| 15 | 14 | 14 | – |
| 16 | 15 | 15 | – |
| Section Caption in All Five Cases: The Parties | | | |
| 17 | 16-18 (Plaintiff specific) | 16 (Plaintiff specific) | 15 (Plaintiff specific) |
| 18 | 19 | 17 | 16 |
| Section Caption in All Five Cases: Trade and Commerce | | | |
| 19 | 20 | 18 | 17 |
| 20 | 21 | 19 | 18 |
| Section Caption in Four Cases: Class Allegations – Federal Injunction | | | |
| 21 | 22 | 20 | – |
| 22 | 23 | 21 | – |
| 23 | 24 | 22 | – |
| 24 | 25 | 23 | – |
| 25 | 26 | 24 | – |
| 26 | 27 | 25 | – |
| 27 | 28 | 26 | – |
| Section Caption in Four Cases: [State] Indirect Purchaser Class | | | |
| 28 | 29 (State specific) | 27 (State specific) | – |
| 29 | 30 | 28 | – |
| 30 | 31 | 29 | – |
| 31 | 32 | 30 | – |
| 32 | 33 | 31 | – |

| Sombke/Century Acres Paragraph: | Identical or Materially Identical Paragraphs in Wade Farms | Identical or Materially Identical Paragraphs in Pullen Seeds | Identical or Materially Identical Paragraphs in ACGA |
|---|---|---|---|
| 33 | 34 | 32 | – |
| 34 | 35 | 33 | – |
| Section Caption in All Five Cases:  Relevant Antitrust Markets | | | |
| 35 | 36 | 34 | 19 |
| Section Caption in All Five Cases:  Relevant Herbicide Markets | | | |
| 36 | 37 | 35 | 20 |
| 37 | 38 | 36 | 21 |
| 38 | 39 | 37 | 22 |
| 39 | 40-41 | 38-39 | 23 |
| 40 | 42-43 | 40-41 | 24 |
| Section Caption in All Five Cases:  Relevant Biotechnology Seed Trait Markets | | | |
| 41 | 44 | 42 | 25 |
| Section Caption in All Five Cases:  Glyphosate-Tolerant Seed Traits | | | |
| 42 | 45 | 43 | 26 |
| 43 | 46 | 44 | 27 |
| 44 | 47 | 45 | 28 |
| 45 | 48 | 46 | 29 |
| Section Caption in All Five Cases:  Pest Resistant Seed Traits | | | |
| 46 | 49 | 47 | 30 |
| 47 | 50 | 48 | 31 |
| 48 | 51 | 49 | 32 |
| 49 | 52 | 50 | 33 |
| Section Caption in All Five Cases:  Factual Allegations | | | |
| Section Caption in All Five Cases:  Weeds and Herbicides | | | |
| 50 | 53 | 51 | 34 |
| 51 | 54 | 52 | 35 |
| 52 | 55 | 53 | 36 |
| Section Caption in All Five Cases:  Biotechnology Crop Seed Traits | | | |
| 53 | 57 | 55 | 37 |
| 54 | 58 | 56 | 38 |
| 55 | – | – | 39 |
| 56 | 59 | 57 | 40 |
| 57 | – | – | 41 |
| Section Caption in All Five Cases:  Monsanto's Domination of the Market for Biotechnology Seed Traits  Section Caption in Three Cases (except Pullen Seeds/Wade Farms):  Monsanto Suppressed and Blocked the Development of Competing Seed Traits Through the Acquisition of Actual and Potential Competitors | | | |
| 58 | 60 | 58 | 42 |
| 59 | – | – | 43 |
| 60 | 61/64 | 59/62 | 44 |
| 61 | 62 | 60 | 45 |
| 62 | 63 | 61 | 46 |

| Sombke/Century Acres Paragraph | Identical or Materially Identical Paragraphs in Wade Farms | Identical or Materially Identical Paragraphs in Pullen Seeds | Identical or Materially Identical Paragraphs in ACGA |
|---|---|---|---|
| 63 | 65 | 63 | 47 |
| 64 | 66 | 64 | 48 |
| 65 | 68 | 66 | 49 |
| 66 | 67 | 65 | 50 |
| Section Caption in Three Cases (except Pullen Seeds/Wade Farms): Monsanto Used Exclusive Dealing Contracts with Independent Seed Companies to Block Key Channels That Were Critical to Full Development of Competing Seed Traits | | | |
| 67 | 69 (first part similar) | 67 (first part similar) | 51 |
| 68 | 70 | 68 | 52 |
| 69 | – | – | 53 |
| 70 | 72 | 70 | 54 |
| 71 | – | – | 55 |
| 72 | 70 (last part similar) | 68 (last part similar) | 56 |
| 73 | 71 | 69 | 57 |
| 74 | 73 | 71 | 58 |
| 75 | 74 | 72 | 59 |
| 76 | 75 | 73 | 60 |
| 77 | 76 | 74 | 61 |
| 78 | 77 | 75 | 62 |
| Section Caption in All Five Cases: Monsanto Exploits its Monopoly in the Glyphosate Tolerant Seed Traits Market to Unlawfully Acquire/Maintain its Monopoly Power in the Glyphosate Herbicide Market | | | |
| 79 | 79 | 77 | 63 |
| 80 | 83 (similar) | 81 (similar) | 64 |
| 81 | 84 | 82 | 65 |
| 82 | 85 | 83 | 66 |
| 83 | 86 | 84 | 67 |
| 84 | 87 | 85 | 68 |
| 85 | – | – | 69 |
| 86 | 88 | 86 | 70 |
| 87 | 89 | 87 | 71 |
| 88 | 90 | 88 | 72 |
| 89 | 91 | 89 | 73 |
| 90 | 92 | 90 | 74 |
| 91 | 93 (first half) | 91 (first half) | 75 |
| 92 | 93 (second half) | 91 (second half) | 76 |
| 93 | 94 | 92 | 77 |
| Section Caption in All Five Cases: Injunctive Relief | | | |
| 94 | 96 | 94 | 78 |

| Sombke/Century Acres Paragraph: | Identical or Materially Identical Paragraphs in Wade Farms | Identical or Materially Identical Paragraphs in Pullen Seeds | Identical or Materially Identical Paragraphs in ACGA |
|---|---|---|---|
| **Section Caption in All Five Cases:** **Count 1: Claim for Injunctive Under 15 U.S.C. § 26** **Unreasonable Restraint of Trade in Violation of § 1 of** **the Sherman Act Anticompetitive Agreements** | | | |
| 95 | 97 | 95 | 79 |
| 96 | 98 | 96 | 80 |
| 97 | 99/100 | 97/98 | 81 |
| 98 | 101 | 99 | 82 |
| 99 | 102 | 100 | 83 |
| **Section Caption in All Five Cases:** **Count II: Claim for Injunctive Relief Under 15 U.S.C. § 26 Sherman Act § 2 – Unlawful** **Monopolization Monsanto's Unlawful Use/Leveraging of its Seed Trait Monopolies to** **Eliminate Competition in the Glyphosate Herbicide Market** | | | |
| 100 | 103 | 101 | 84 |
| 101 | 104 | 102 | 85 |
| 102 | 105 | 103 | 86 |
| 103 | 106 | 104 | 87 |
| 104 | 107 | 105 | 88 |
| 105 | 108 | 106 | 89 |
| 106 | 109 | 107 | 90 |
| **Section Caption in All Five Cases:** **Count III: Claim for Injunctive Relief under 15 U.S.C. § 26 Sherman Act § 2 – Unlawful** **Monopolization Monsanto's Unlawful Acquisition and/or Maintenance of its Glyphosate** **Herbicide Monopoly** | | | |
| 107 | 110 | 108 | 91 |
| 108 | 111 | 109 | 92 |
| 109 | 112 | 110 | 93 |
| 110 | 113 | 111 | 94 |
| 111 | 114 | 112 | 95 |
| 112 | 115 | 113 | 96 |
| 113 | 116 | 114 | 97 |
| **Section Caption in Four Cases:** **Count IV: Violation of [State] Code** **(Anticompetitive Tying/Bundling Agreement)** | | | |
| 114 | 117 | 115 | – |
| 115 | 118 | 116 | – |
| 116 | 119/120 | 117/118 | – |
| 117 | 121 | 119 | – |
| 118 | 122 | 120 | – |

| Sombke/Century Acres Paragraph: | Identical or Materially Identical Paragraphs in Wade Farms | Identical or Materially Identical Paragraphs in Pullen Seeds | Identical or Materially Identical Paragraphs in ACGA |
|---|---|---|---|
| Section Caption in Four Cases: Count V: Violation of [State] Code (Monsanto's Unlawful Use/Leveraging of its Seed Trait Monopolies to Eliminate Competition in the Glyphosate Herbicide Market) | | | |
| 119 | 123 | 121 | – |
| 120 | 124 | 122 | – |
| 121 | 125 | 123 | – |
| 122 | 126 | 124 | – |
| 123 | 127 | 125 | – |
| 124 | 128 | 126 | – |
| 125 | 129 | 127 | – |
| Section Caption in Four Cases: Count VI: Violation of [State] Code (Monsanto's Unlawful Maintenance of its Glyphosate Herbicide Monopoly) | | | |
| 126 | 130 | 128 | – |
| 127 | 131 | 129 | – |
| 128 | 132 | 130 | – |
| 129 | 133 | 131 | – |
| 130 | 134 | 132 | – |
| 131 | 135 | 133 | – |
| 132 | 136 | 134 | – |
| Section Caption in All Five Cases:  Prayer for Relief | | | |
| A | A | A | – |
| B | B | B | A |
| C | C | C | B |
| D | D | D | – |
| E | E | E | – |
| F | F | F | – |
| G | G | G | C |
| H | H | H | D |

Sources:  Complaint, *Sombke v. Monsanto Co.*, No. 07-122 (D. Del. filed Feb. 27, 2007); Complaint, *Century Farms v. Monsanto Co.*, No. 07-123 (D. Del. filed Feb. 27, 2007); Complaint, *American Corn Growers Association v. Monsanto Co.*, No. 07-100 (D. Del. filed Feb. 21, 2007); Complaint, *Pullen Seeds and Soil v. Monsanto Co.*, No. 06-599 (D. Del. filed Sept. 26, 2006); Complaint, *Wade Farms v. Monsanto Co.*, No. 06-600 (D. Del. filed Sept. 26, 2006)

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PULLEN SEEDS AND SOIL, on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 06-599-SLR |
| MONSANTO COMPANY, | ) ) ) | |
| Defendant. | ) ) | |
| WADE FARMS, WHITTINGTON & SUMNER FARMS, CLIFFORD F. DANCE, D/B/A CLIFFORD DANCE FARMS, and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 06-600-SLR |
| v. | ) ) ) | |
| MONSANTO COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT MONSANTO COMPANY'S MOTIONS TO DISMISS

OF COUNSEL:

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800

Dated: November 20, 2006

Richard Horwitz (#2246)
David E. Moore (#3938)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Monsanto Company*

## TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF THE ARGUMENT .......................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

    A.   Plaintiffs' Complaints ................................................................................ 3

    B.   Plaintiffs Assert That Their Alleged Injuries Resulted In Part From Their Allegedly Anticompetitive Agreements With Monsanto ................................... 4

    C.   Plaintiffs' Technology Agreements With Monsanto Required These Actions to Be Filed in a St. Louis Court ........................................................... 6

STANDARD FOR MOTION TO DISMISS .............................................................. 7

ARGUMENT ................................................................................................................ 8

THIS COURT SHOULD DISMISS THE COMPLAINTS BECAUSE PLAINTIFFS AGREED TO BRING THESE ACTIONS IN A ST. LOUIS COURT ........................................................................................................................ 8

    A.   The Forum Selection Clause is Valid, Binding, and Enforceable ................ 8

    B.   Plaintiffs' Disputes With Monsanto Arise Out of and Are Connected With the Technology Agreement ..................................................................... 12

CONCLUSION ............................................................................................................ 14

## TABLE OF CITATIONS

### CASES

*American Seed Co. v. Monsanto Co.*,
  C.A. No. 05-535-SLR, Order (D. Del. Dec. 5, 2005) .......................................2, 11, 13

*Bbdova, LLC v. Auto. Techs., Inc.*,
  358 F. Supp. 2d 387 (D. Del. 2005) .......................................................................8, 11

*Blades v. Monsanto Co.*,
  No. 00-CV-4034-DHR, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001) .............. ....2, 8, 9

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) ..........................................................................................7

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .................................................................................... ....7

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
  709 F.2d 190 (3d Cir. 1983) .......................................................................... ..........8

*Crescent Int'l Inc. v. Avatar Cmtys., Inc.*,
  857 F.2d 943 (3d Cir. 1988) ..........................................................................7, 13

*Firmani v Clarke*,
  325 F. Supp. 689 (D. Del. 1971) ..............................................................................10

*Green v. Warden, U.S. Penitentiary*,
  699 F.2d 364 (7th Cir. 1983) ......................................................................................7

*Hay Acquisition Co., I., Inc. v. Schneider*,
  No. 2:04-CV-1236, 2005 WL 1017804 (E.D. Pa. Apr. 27, 2005) .........................13

*John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*,
  119 F.3d 1070 (3d Cir. 1997) ..................................................................................12

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ......................................................................................12

*Kahn v. Am. Heritage Life Ins.*,
  No. 06-01832, 2006 WL 1879192 (E.D. Pa. June 29, 2006) ...................................12

*Lauro Lines S.R.L. v. Chasser*,
  490 U.S. 495 (1989) .......................................................................... ...................8

ii

*Massey v. Monsanto Co.*,
  No. 299-CV-218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000) ..............2, 8

*McNair v. Monsanto Co.*,
  279 F. Supp. 2d 1290 (M.D. Ga. 2003) .................................................................... 9

*Monsanto Co. v. Baumgardner*,
  No. 4:04-CV-00708 ERW, Mem. and Order (E.D. Mo. Mar. 29, 2005)................6

*Monsanto Co. v. Dawson*,
  No. 4:98-CV-02004TCM, 2000 WL 33952259 (E.D. Mo. Aug. 18, 2000)............9

*Monsanto Co. v. Godfredson*,
  No. 4:99-CV-1691 CDP, 2000 WL 33952257 (E.D. Mo. April 13, 2000) .............9

*Monsanto Co. v. Nelson*,
  No. 4:00-CV-1636 CEJ, 2001 WL 34079479 (E.D. Mo. Sept. 10, 2001)...............9

*Monsanto Co. v. Swann*,
  No. 4:00-CV-1481 CEJ, 2001 WL 34053250 (E.D. Mo. Sept. 25, 2001)...............9

*Monsanto Co v. White*,
  No. 4:00-CV-1761 RWS, 2001 WL 34053249 (E.D. Mo. June 22, 2001)....... ......9

*Monsanto Co. v. McFarling*,
  302 F.3d 1291 (Fed. Cir. 2002)...............................................................................9

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972).......................................................................................................8

*Oak Sys. v. Fracotyp-Postalia, Inc.*,
  No. 01-2794, 2002 U.S. Dist. LEXIS 2213 (3d Cir. Feb. 5, 2002) ........ .............13

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004)......................................................................................2

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
  288 F.3d 548 (3d Cir. 2002).....................................................................................7

*Salovaara v. Jackson Nat'l Life Ins.*,
  246 F.3d 289 (3d Cir. 2001)..................................................................................2, 7

*Southmark Prime Puls, LP v. Falzone*,
  776 F. Supp. 888 (D. Del. 1991)...............................................................................7

- iii -

*Stewart Org., Inc. v. Ricoh Corp.,*
   487 U.S. 22 (1988)..........................................................................................................8

*United States Fid. & Guar. Co. v. Am. Home Assurance,*
   No. 98 CIV 3099 JGK, 2001 WL 300735 (S.D.N.Y. Mar. 27, 2001)....................10

## STATUTES AND RULES

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 7

Fed. R. Civ. P. 12(h)(1)......................................................................................................2

## NATURE AND STAGE OF THE PROCEEDINGS

On September 26, 2006, Plaintiff Pullen Seeds and Soil filed a putative class action (C.A. No. 06-599-SLR) against Defendant Monsanto Company. On the same day, Plaintiffs Wade Farms, Whittington & Sumner Farms, and Clifford F. Dance Farms filed a virtually identical action (C.A. No. 06-600-SLR) against Monsanto. Defendant Monsanto moves to dismiss the Complaints in both cases pursuant to Fed. R. Civ. P. 12(b)(6). Because the Complaints in the two cases are nearly identical and are subject to dismissal on the same ground, this Memorandum, for the convenience of the Court, addresses the motions filed in both cases.

## SUMMARY OF THE ARGUMENT

1.      Plaintiffs brought these antitrust cases in the wrong forum. Plaintiffs are "licensed growers" of genetically modified corn, soybean, and other seed containing genetic traits patented by Monsanto. (Pullen Compl. ¶ 16; Wade Compl. ¶¶ 16-18). Plaintiffs entered into license agreements with Monsanto to grow seed containing Monsanto's seed trait technologies. The Complaints assert that Monsanto wielded its purported control over its patented seed traits – and used the very patent licenses executed by Plaintiffs – to restrain trade and monopolize the market for glyphosate, the generic name of Monsanto's "Roundup" herbicide. Plaintiffs claim that the licenses improperly required them and other putative class members to purchase Monsanto's glyphosate herbicides in order to use Monsanto's seed traits. Plaintiffs characterize the seed trait license agreements as "unlawful," "exclusionary," and "anticompetitive." (Pullen Compl. ¶ 92; Wade Compl. ¶ 94). But those same agreements, which bind Plaintiffs as licensees, designate courts in St. Louis as "the sole and exclusive jurisdiction

and venue" for "*all* claims and disputes *arising out of or connected in any way with this agreement* and the use of the seed or the Monsanto technologies." Unlike the forum selection clause in Monsanto's license agreements with some seed companies, which this Court found in *American Seed v. Monsanto,* C.A. No. 05-535-SLR to be permissive, this provision is mandatory. It says unequivocally that, "*Any* lawsuit *must* be filed in St. Louis., Mo." By contrast, the provision at issue in *American Seed* merely stated that disputes "*may* be heard and determined in" Missouri.

To be sure, Plaintiffs' implausible claims should not proceed in any forum, as it is a matter of public record that the price of glyphosate has plummeted, conclusively rebutting allegations of monopolization. But that issue is for a later day. The question of where the cases will be litigated should be resolved at the outset.[1]

2.    Federal courts in antitrust putative class actions repeatedly have enforced the forum selection clause contained in the patent license agreement at issue here. *See, e.g., Blades v. Monsanto Co*, No. 00-CV-4034-DHR, 2001 WL 775980, at *3-4 (S.D. Ill. Jan. 3, 2001); *Massey v. Monsanto Co.*, No. 299-CV-218-P-B, 2000 WL 1146705, at *2 (N.D. Miss. June 13, 2000). In this Circuit, breach of a forum selection clause is grounds for dismissal. *Salovaara v. Jackson Nat'l Life Ins.*, 246 F.3d 289, 298 (3d Cir. 2001). The Court therefore should dismiss the Complaints, without prejudice to Plaintiffs re-filing them in St. Louis, Missouri, where over a dozen cases containing allegations similar to those here currently are pending.

---

[1]    *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597-98 (3d Cir. 2004) (defendant that moved to dismiss concerning threshold forum issues did not waive right to later bring motion to dismiss for failure to state a claim based on arbitration or other grounds that are not expressly waived under Fed. R. Civ. P. 12(h)(1)).

## STATEMENT OF FACTS

### A.    Plaintiffs' Complaints

In September 2006, Plaintiff Pullen Seeds and Soil, an Iowa company that grows genetically modified seed in Iowa (Pullen Compl. ¶ 16), filed its Complaint against Monsanto Company. On the same day, Plaintiffs Wade Farms, Whittington & Sumner Farms, and Clifford F. Dance Farms – all Mississippi businesses that grow genetically modified seed in Mississippi – filed a virtually identical Complaint against Monsanto. (Wade Compl. ¶¶ 16-18). Plaintiffs do not claim to have any relationship with this forum.

Monsanto is a Delaware corporation headquartered in St. Louis, Missouri. (Pullen Compl. ¶ 17; Wade Compl. ¶ 19). Monsanto manufactures Roundup brand herbicides. (Pullen Compl. ¶¶ 1, 37; Wade Compl. ¶¶ 1, 39). It also holds patents for genetic seed traits, and it licenses seed companies to include those traits in corn, soybean, and other seed. (Pullen Compl. ¶¶ 1, 43-46; Wade Compl. ¶ 1, 45-48).

Plaintiffs claim that Monsanto violated federal and state antitrust laws "by using its monopoly power in various biotechnology seed trait markets to unlawfully monopolize and restrain competition in the market for glyphosate herbicides." (Pullen Compl. ¶ 2; Wade Compl. ¶ 2). The Complaints focus on Monsanto's patented seed traits that make crops resistant to glyphosate-based herbicides, such as Roundup. Specifically, Plaintiffs allege that Monsanto improperly used the "seed trait monopolies" its patents conferred, to keep other companies from developing their own new seed traits providing resistance to non-glyphosate-based herbicides. (E.g., Pullen Compl. ¶¶ 6, 58-60, 80; Wade Compl. ¶¶ 6, 60-62, 82). Because other companies did not develop such new traits, Plaintiffs allegedly "paid non-competitive and artificially inflated prices" for

3

Roundup. (Pullen Compl. ¶¶ 1-2; Wade Compl. ¶¶ 1-2). In short, Plaintiffs allege that

Monsanto's conduct regarding seed traits affected the price of herbicides.

Based on this theory, Plaintiffs seek only declaratory and injunctive relief under

federal antitrust laws for nationwide classes of direct and indirect purchasers of Roundup

herbicides. (Pullen Compl. ¶ 20; Wade Compl. ¶ 22). Disregarding a clear conflict of

interest, Plaintiffs also seek *damages* under state laws for a small subset of these federal

injunction putative classes, indirect purchasers of Roundup in Iowa (Pullen Compl. ¶ 27)

and Mississippi (Wade Compl. ¶ 29).

### B.    Plaintiffs Assert That Their Alleged Injuries Resulted In Part From Their Allegedly Anticompetitive Agreements With Monsanto

Plaintiffs' theory rests on the allegation that Monsanto suppressed competition in

genetically modified traits. (Pullen Compl. ¶¶ 1-2; Wade Compl. ¶¶ 1-2). Monsanto has

been litigating that issue for several years in more than a dozen cases now pending before

a federal court in St. Louis. *See Schoenbaum et al. v. E.I. Dupont de Nemours and Co. et

al.*, No. 4:05-CV-01108-ERW (E.D. Mo.) (13 cases filed in 2004, transferred to Missouri

in 2005 and consolidated); *McIntosh v. Monsanto Co.*, No. 4:01-CV-0065 (E.D. Mo.)

(consolidated cases filed 1999 and 2000, transferred to Missouri in 2001). Indeed, it

appears that Plaintiffs drew on those complaints.[2]

As in the pending St. Louis federal actions, Plaintiffs allege that Monsanto used

its patent license agreements with farmers ("Technology Agreements") to further the

purported scheme to monopolize. (*See* Pullen Compl. ¶¶ 8, 82-92; Wade Compl. ¶¶ 8,

84-94). Specifically, according to Plaintiffs, "Monsanto has . . . imposed exclusionary

---

[2]    The chart attached as Ex. A highlights the striking parallels between the complaints in the Missouri cases and those filed here.

and restrictive conditions at the grower level that prevent growers from using generic glyphosate in connection with Monsanto's glyphosate tolerant seed traits." (Pullen Compl. ¶ 86; Wade Compl. ¶ 88). In particular, Plaintiffs allege, "Monsanto requires growers to sign a technology license . . . that effectively mandates that they use only Roundup herbicides" on seeds containing Monsanto's patented traits. (Pullen Compl. ¶ 86; Wade Compl. ¶ 88). Plaintiffs allege that Technology Agreements from 1998 to 2000 improperly "conditioned the grant of a license to use its Roundup Ready seed technology on the grower's agreement to purchase and use only Monsanto's Roundup herbicide." (Pullen Compl. ¶ 86; Wade Compl. ¶ 88).

Further, Plaintiffs claim, "[w]hile the language in Monsanto's more recent [Technology Agreements] appear[s] to permit a grower to use a non-Roundup glyphosate herbicide in connection with Monsanto's glyphosate-tolerant seed traits, other aspects of the Grower's Agreement demonstrate that this 'choice' is illusory and that a grower is still effectively locked into using Roundup virtually exclusively." (Pullen Compl. ¶ 87; Wade Compl. ¶ 89). Indeed, Plaintiffs attack the Agreement twice on this ground, alleging that "Monsanto has effectively maintained the same condition in its technology license that requires a grower using Monsanto's biotechnology seed traits to use Roundup virtually exclusively rather than a cheaper generic glyphosate herbicide." (Pullen Compl. ¶ 90; Wade Compl. ¶ 92). Plaintiffs assert in addition that an "inherent component of the Tech Fee" payable under the Agreement resulted in overcharges for Roundup. (Pullen Compl. ¶ 88; Wade Compl. ¶ 90). In sum, Plaintiffs claim that Monsanto's "anticompetitive conduct including its exclusionary licensing agreements with . . .

growers . . . has unlawfully restrained trade and maintained its monopoly in the market

for glyphosate herbicides." (Pullen Compl. ¶ 92; Wade Compl. ¶ 94).

### C.    Plaintiffs' Technology Agreements With Monsanto Required These Actions to Be Filed in a St. Louis Court

As licensees under the Technology Agreement, Plaintiffs were obligated to

bring these claims in St. Louis. The applicable Agreements provide:

> THE PARTIES CONSENT TO THE SOLE AND
> EXCLUSIVE JURISDICTION AND VENUE OF THE U.S.
> DISTRICT COURT FOR THE EASTERN DISTRICT OF
> MISSOURI, EASTERN DIVISION, AND THE CIRCUIT
> COURT OF THE COUNTY OF ST. LOUIS, MISSOURI,
> (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR
> ALL CLAIMS AND DISPUTES ARISING OUT OF OR
> CONNECTED IN ANY WAY WITH THIS AGREEMENT
> AND THE USE OF THE SEED OR THE MONSANTO
> TECHNOLOGIES EXCEPT FOR COTTON-RELATED
> CLAIMS MADE BY THE GROWER.

(*See* Ex. B, 2006 Technology Agreement at 2; Ex. C (sample Technology Agreements

used since 1998); Ex. D (signature page to agreements signed by Plaintiffs)).[3]  Given that

Plaintiffs expressly attack the Technology Agreement, these cases arise out of and are

connected with the Agreements under attack, as well as with Plaintiffs' use of genetically

modified seed and Monsanto's technologies. Plaintiffs thus were contractually bound to

file these cases in St. Louis.

---

[3]    Monsanto uses a new Technology Agreement for each crop year and the forum clause language changed in non-material ways over time. The United States District Court for the Eastern District of Missouri held that, because the Agreements provide that they remain in effect until terminated and that continuing use of Monsanto's technologies after new terms are issued constitutes an agreement to be bound by the new terms, the forum clause in the most recent Technology Agreement applies. *Monsanto v. Baumgardner*, No. 4:04-CV-00708 ERW, Mem. and Order at 9 n.10 (E.D. Mo. Mar. 29, 2005) (Ex. E). Accordingly, the forum clause in the 2006 Technology Agreement is applicable here. In any event, the question of which version of the Agreement applies is of no consequence, because the Complaints must be dismissed under any iteration.

## STANDARD FOR MOTION TO DISMISS

The Court of Appeals for the Third Circuit has held that, "a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause." *Salovaara v. Jackson Nat'l Life Ins., Co*, 246 F.3d 289, 298 (3d Cir. 2001) (affirming dismissal of action based on forum clause requiring a state or federal court in another forum); *Crescent Int'l Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988) (similar).[4]

Although a court considering a motion under Fed. R. Civ. P. 12(b)(6) focuses on the pleadings, it can properly review contracts or other documents referenced in the complaint. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A court also can take judicial notice and consider matters such as pleadings in other cases, *see Southmark Prime Puls, LP v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983), and official government records. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

---

[4]   A court also has power, on its own motion, to transfer a case to another federal forum should it determine that transfer, rather than dismissal, is the appropriate course. *Salovaara*, 246 F.3d at 299.

7

## ARGUMENT

## THIS COURT SHOULD DISMISS THE COMPLAINTS BECAUSE PLAINTIFFS AGREED TO BRING THESE ACTIONS IN A ST. LOUIS COURT

### A.    The Forum Selection Clause is Valid, Binding, and Enforceable

Forum selection clauses are "presumptively valid" and enforceable unless enforcement would be unreasonable under the circumstances. *E.g.*, *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd*, 709 F.2d 190, 202 (3d Cir. 1983), *abrogated on other grounds*, *Lauro Lines v. Chasser S R L.*, 490 U.S. 495 (1989); *accord M/S Bremen v. Zapata Off-Shore Co*, 407 U.S. 1, 10 (1972); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988); *Bbdova, LLC v. Auto Techs., Inc.*, 358 F. Supp. 2d 387, 390 (D. Del. 2005). To overcome the presumption, a party challenging enforcement of a forum clause must show "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel*, 709 F.2d at 202; *accord Bbdova*, 358 F. Supp. 2d at 390.

Plaintiffs can make none of these showings. *First*, nowhere do Plaintiffs allege that they entered into the Technology Agreements as the result of fraud, undue influence, or duress. Nor could Plaintiffs make such allegations. Courts repeatedly have found the Technology Agreement's forum selection clause, a standardized agreement, valid and enforceable.[5] For example, in *Blades v. Monsanto* (now docketed and pending in St.

---

[5]    *See, e.g.*, *Blades Co. v. Monsanto*, No. 00-CV-4034-DHR, 2001 WL 775980, at *3 (S.D. Ill. Jan. 3, 2001) (rejecting argument in antitrust case that Technology Agreement and forum clause were contracts of adhesion or the result of fraud); *Massey v. Monsanto Co.*, No. 299-CV-218-P-B, 2000 WL 1146705, at *2 (N.D. Miss. June 13, 2000) (rejecting argument in antitrust case that forum selection clause in Technology
Footnote continued on next page

8

Louis as *McIntosh v. Monsanto*), the complaint alleged "that Monsanto Company committed antitrust violations and violations of other laws in the pricing, selling, marketing and promotion of the GM corn and soybean seeds." 2001 WL 775980, at *1. The complaint also alleged, as the Complaints here, that the Technology Agreements improperly required "a farmer who buys Roundup Ready seeds [to] purchase Roundup [herbicide] from Monsanto at whatever price Monsanto decides to charge." *See Blades v. Monsanto Co.*, No. 00-CV-4034, Orig. Compl. ¶ 79 (S.D. Ill. Feb. 14, 2000) (Ex. F). The court held that the forum clause was not an adhesion contract and found nothing to "establish as a matter of law that the forum selection clause is unconscionable." 2001 WL 775980, at *3. The court therefore enforced the clause by transferring that case and a related action to St. Louis federal court:

> Having found the forum selection clause in the Technology
> Agreements entered into by Peterson valid, the Court
> concludes that venue in this judicial district is not proper,
> but instead lies within the United States District Court for

---

Footnote continued from previous page

Agreement was the result of "fraud, undue influence, or an overwhelming bargaining power."); *see also McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1302 (M.D. Ga. 2003) (no showing in tort and contract case of "a disparity in bargaining power such that it would be unjust or unreasonable to enforce the forum selection clause."); *Monsanto Co. v. McFarling*, 302 F.3d 1291 (Fed. Cir. 2002) (upholding finding in patent infringement and breach of contract case that Technology Agreement was valid and enforceable); *Monsanto Co. v. Swann*, No. 4:00-CV-1481 CEJ, 2001 WL 34053250 (E.D. Mo. Sept. 25, 2001) ("The Court has been called upon to consider this clause on several prior occasions, and has consistently found that it is both valid and enforceable."); *Monsanto Co. v. Nelson*, No. 4:00-CV-1636 CEJ, 2001 WL 34079479, at *1 (E.D. Mo. Sept. 10, 2001) (finding in patent infringement and breach of contract case that "forum selection clause is neither unjust, unreasonable, nor invalid"); *Monsanto Co. v. White*, No. 4:00-CV-1761 RWS, 2001 WL 34053249, at *4 (E.D. Mo. June 22, 2001) (upholding forum selection clause in patent infringement and breach of contract case and noting that commercial farmer "cannot now ignore the law or the parties' agreement"); *Monsanto Co. v. Dawson*, No. 4:98-CV-02004 TCM, 2000 WL 33952259, at *2 (E.D. Mo. Aug. 18, 2000) (finding in patent infringement and breach of contract case that forum clause "is neither unjust, unreasonable, nor invalid."); *Monsanto Co. v. Godfredson*, No. 4:99-CV-1691 CDP, 2000 WL 33952257 (E.D. Mo. April 13, 2000) (upholding forum selection clause in patent infringement and breach of contract case).

> the Eastern District of Missouri. Specifically, the
> Technology Agreement exclusively provides for both
> venue and jurisdiction in the Eastern District of Missouri,
> Eastern Division. In the case at bar, the parties freely
> negotiated the contractually chosen forum. Plaintiffs have
> not shown any fraud or overreaching by Monsanto in the
> Technology Agreement between Peterson and Monsanto.
> Therefore, Plaintiffs should not be allowed to bypass the
> contractual agreement now by bringing suit in the wrong
> court.

*Id* at *4. Here, too, Plaintiffs cannot meet their heavy burden of showing the clause is

unreasonable and should not be allowed to shirk their contractual obligations by bringing

suit outside St. Louis.

 *Second*, enforcement of the forum selection clause in this case violates no strong

public policy of Delaware. On the contrary, dismissing these cases provide Plaintiffs the

opportunity to refile in the United States District Court for the Eastern District of

Missouri, where the Court already is considering allegations by members of the putative

classes here that parallel, overlap, and potentially conflict with Plaintiffs' allegations.

Thus, dismissing the cases under the forum selection clause here would promote judicial

economy. *See Firmani v. Clarke*, 325 F. Supp. 689, 693 (D. Del. 1971) ("A strong public

policy favors bringing all such litigation together in one tribunal so that pretrial discovery

may be conducted more efficiently, witnesses' time may be conserved, public and

parties' litigation expenses may be reduced, and inconsistent results can be avoided.");

*United States Fid. & Guar. Co. v. Am. Home Assurance*, No. 98 CIV 3099 JGK, 2001

WL 300735, at *17 (S.D.N.Y. Mar. 27, 2001) ("In this case, given that the parties

involved in the cross-claims are, for the most part, Brazilian entities, litigation is already

being pursued by IVI and Sade in Brazil, and the will of the parties to the various

contracts is carried out to the greatest extent possible by having the IVI Group litigate

their claims against Petrobras in Brazil, the IVI Group has not overcome the presumptive validity of the forum selection clauses").

To be sure, as the Court is aware, *American Seed Co. v. Monsanto Co.*, C.A. No. 05-535-SLR, which is pending in this District, involves claims by direct purchaser-seed companies that Monsanto monopolized markets for genetically modified corn. The case also includes claims by intervenors who are growers of genetically modified corn in Minnesota and Iowa. However, the Missouri cases, like these cases and unlike *American Seed*, principally involve plaintiffs who are growers. Further, the Missouri cases, like these cases and unlike *American Seed*, include claims concerning crops other than corn. Thus, dismissal here advances not only the policy in favor of enforcing contractual commitments, but also the interests of judicial economy.

*Third*, litigating in St. Louis will not be "so gravely difficult and inconvenient that [Plaintiffs] will for all practical purposes be deprived of [their] day in court." *Bbdova*, 358 F. Supp. 2d at 390. Missouri in fact appears more convenient for Plaintiffs than this Court, and is far more convenient for Monsanto. Plaintiffs are Iowa and Mississippi businesses. They grow crops in Iowa and Mississippi. And they purport to represent classes of Iowa and Mississippi residents on claims under Iowa and Mississippi law. Plaintiffs' only apparent connection to Delaware is that one of the eight law firms representing them is in Wilmington. (Pullen Compl. pp. 40-41; Wade Compl. pp. 41-42). By comparison, Monsanto is headquartered in St. Louis (Pullen Compl. ¶ 17; Wade Compl. ¶ 19). Its executives therefore are in St. Louis, as are corporate records. Moreover, by entering into the Technology Agreement, Plaintiffs acknowledged that Missouri is a reasonable forum – in fact, the exclusive forum – for these actions. *See*

11

*Jumara v State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) ("a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum").

### B.    Plaintiffs' Disputes With Monsanto Arise Out of and Are Connected With the Technology Agreement

The forum selection clause here is broad and provides that "all claims *and disputes* arising out of *or connected in any way with* this agreement and the use of the seed or the Monsanto technologies" must be filed in St. Louis. (*See* Ex. B (emphasis added)). The Third Circuit has held that forum selection clauses covering "disputes," as this one does, have a much broader scope than those covering "claims" related to a contract. *John Wyeth & Brother Ltd. v. Cigna Int'l Corp*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.). The court also held that a clause using language such as "related to" – equivalent to the language "connected in any way with" in the Agreement here – makes the forum selection clause even more expansive. *Id.* For example, applying *John Wyeth & Brothers*, a district court within the Third Circuit recently found that a clause similar to the one here, which applied to "disputes arising out of or related in any way" to the contract covered more than just claims based on breach of contract. *Kahn v. Am. Heritage Life Ins.*, No. 06-01832, 2006 WL 1879192, at *6 (E.D. Pa. June 29, 2006). The court recognized that such broad provisions can encompass non-contractual claims if the contract was at least connected to the underlying, allegedly unlawful scheme. *See id.* (insurance agent's claims under the Pennsylvania Human Relations Act against insurer, "while not based on her contract with Defendants, arise out of the contractual relationship created between them by the contract, and her claims implicate the contract to the extent that she claims termination of the contract was a form of unlawful retaliation under the PHRA. Thus, Plaintiff's PHRA claims are sufficiently related to the agent contract to fall

12

within the scope of the broadly worded forum selection clause included therein."); *see also Hay Acquisition Co., I., Inc. v. Schneider*, No. 2:04-CV-1236, 2005 WL 1017804, at *6 (E.D. Pa. Apr. 27, 2005) ("Third Circuit [precedent] is clear that 'broad, unconditional forum selection clauses which mandate jurisdiction in a specific forum . . . apply to all claims, whether they be based in tort or contract, and shall be enforced" (quoting *Oak Sys. v. Fracotyp-Postalia, Inc., et al.*, No. 01-2794, 2002 U.S. Dist. LEXIS 2213, at *7 (3d Cir. Feb. 5, 2002)).[6]

Finally, the forum selection clause in the Technology Agreement is mandatory, not permissive. The parties consent to the "sole and exclusive jurisdiction and venue" of the St. Louis courts. "Sole" and "exclusive" are unambiguous, meaning that there is no other. But to reinforce the point, the clause here adds that "any lawsuit must be filed in St. Louis, MO." The clause thus bears no resemblance to the one in some licenses with seed companies – not growers – which provided that claims "*may* be heard and determined in" Missouri. *See American Seed Co., Inc., v. Monsanto Co.*, C.A. No. 05-535-SLR, Order (D. Del. Dec. 5, 2005) (Ex. G) (order denying transfer on ground that this language was permissive (emphasis added)).

Here, Plaintiffs' allegations of wrongdoing envelop the Technology Agreement. As discussed, Plaintiffs claim that earlier versions of the Technology Agreement unlawfully compelled growers to purchase Roundup herbicide, that the current Agreement restrains trade, and that components of the fees paid under the Technology

---

[6]    Beyond that, the Third Circuit has found that even more narrowly worded clauses may cover non-contract claims if the dispute implicates the parties' contractual relation or contract terms. *See Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943 (3d Cir. 1988 (per curiam) (finding that clause stating that "any litigation upon any of [the contractual] terms . . . . shall be maintained" in Florida courts, included RICO and tort claims since they "arise out of contractual relation and implicate the contract's terms").

Agreement have resulted in overcharges for Roundup. (Pullen Compl. ¶ 86; Wade Compl. ¶ 88). Plaintiffs describe the Agreement as "exclusionary" and "restrictive," contend that it "effectively mandates that [farmers] use only Roundup herbicides on Roundup Ready crops," and complain that "the grower is still effectively locked into using Roundup virtually exclusively." (Pullen Compl. ¶¶ 86-88, 92; Wade Compl. ¶¶ 88-90, 94). These claims do not merely "arise under" the Agreement. They are explicitly predicated on it. They are not merely "connected with" the use of Monsanto's technology. They center on the alleged tie between the use of the technology and the purchase of Roundup.

## CONCLUSION

Plaintiffs agreed to bring suits like these in St. Louis. Those agreements are valid and enforceable. The Court therefore should dismiss the Complaints.

OF COUNSEL:

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Dated: November 20, 2006

763266 / 30803

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    Richard Horwitz (#2246)
    David E. Moore (#3938)
    Hercules Plaza, 6th Floor
    P.O. Box 951
    Wilmington, DE 19801
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 20, 2006, the attached document was

hand delivered to the following persons and was electronically filed with the Clerk of the Court

using CM/ECF which will send notification to the registered attorney(s) of record that the

document has been filed and is available for viewing and downloading:

Jeffrey S. Goddess
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899

I hereby certify that on November 20, 2006, I have sent by Electronically Mailed the

foregoing document to the following:

Noah H. Silverman
Bruce E. Gerstein
Joseph Opper
Garwin Gerstein & Fisher LLP
1501 Broadway, Suite 1416
New York, NY 10036
nsilverman@garwingerstein.com
bgerstein@garwingerstein.com
jopper@garwingerstein.com

Adam M. Moskowitz
Tucker Ronzetti
David M. Buckner
Kozyak Torpin & Throckmorton, P.A.
2525 Ponce de Leon, 9th floor
Miami, FL 33134
AMM@KTTLAW.COM
TR@KTTLAW.COM
DMB@KTTLAW.COM

*/s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

763267 / 30803

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PULLEN SEEDS AND SOIL, on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | C.A. No. 06-599-SLR |
| MONSANTO COMPANY, | ) ) ) | |
| Defendant. | ) ) | |
| WADE FARMS, WHITTINGTON & SUMNER FARMS, CLIFFORD F. DANCE, D/B/A CLIFFORD DANCE FARMS, and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 06-600-SLR |
| v. | ) ) ) | |
| MONSANTO COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
MONSANTO COMPANY'S MOTIONS TO DISMISS

OF COUNSEL:

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800

Richard Horwitz (#2246)
David E. Moore (#3938)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Monsanto Company*

Dated:  January 12, 2007
772322/30803

**TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................................................. ii

INTRODUCTION ........................................................................................................1

ARGUMENT.................................................................................................................3

I.       THE FORUM SELECTION CLAUSE COVERS THESE CASES........................3

II.      PLAINTIFFS FAIL TO OVERCOME THE PRESUMPTION THAT
         THE FORUM CLAUSE IS VALID AND ENFORCEABLE...............................10

CONCLUSION.............................................................................................................13

## TABLE OF CITATIONS

### CASES

*American Seed Co. v. Monsanto Co.,*
    C.A. No. 05-535-SLR, 2006 WL 3276831 (D. Del. Nov. 13, 2006)................6, 12

*Armco Inc. v. North Atlantic Ins. Co.,*
    68 F. Supp. 2d 330 (S.D.N.Y. 1999)........................................................................8

*Blades v. Monsanto Co.,*
    No. 00-CV-4034-DRH, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001)....................5, 12

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,*
    709 F.2d 190 (3d Cir. 1983)
    *abrogated on other grounds, Lauro Lines S.R.L. v. Chasser,*
    490 U.S. 495 (1989)....................................................................................... *passim*

*Cottman Transmission Sys., Inc. v. Martino,*
    36 F.3d 291 (3d Cir. 1994).....................................................................................7

*Crescent Int'l Inc. v. Avatar Cmtys., Inc.,*
    857 F.2d 943 (3d Cir. 1988)...................................................................................5

*Farmland Indus. Inc. v. Frazier-Parrot Commodities, Inc.,*
    806 F.2d 848 (8th Cir. 1987) ..............................................................................7, 8

*Fleming & Hall, Ltd. v. Cope,*
    30 F. Supp. 2d 459 (D. Del. 1998)........................................................................10

*Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    885 F.2d 1149 (3d Cir. 1989)................................................................................12

*Homeware, Inc. v. Kidde, Inc.,*
    No. 86-3914, 1987 WL 5714 (E.D. Pa. Jan. 21, 1987)............................................5

*Howard v. Illinois Cent. R.R. Co.,*
    207 U.S. 463 (1908)..............................................................................................11

*Jayson Co. v. Vertical Mkt. Software & Vertical Software Servs., Inc.,*
    No. 05-3883, 2006 U.S. Dist. LEXIS 30638 (D. N.J. May 18, 2006)......................7

*Massey v. Monsanto Co.,*
    No. 299CV218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000)...............5, 12

*McNair v. Monsanto Co.,*
    279 F. Supp. 2d 1290 (M.D. Ga. 2003) ..................................................................9

ii

*Monsanto Co. v. McFarling*,
    302 F.3d 1291 (Fed. Cir. 2002)............................................................................12

*Monsanto Co. v. McFarling*,
    363 F.3d 1336 (Fed. Cir. 2004)............................................................................12

*Nascone v. Spudnuts, Inc.*,
    735 F.2d 763 (3d Cir. 1984)..................................................................................5

*Palcko v. Airborne Express, Inc.*,
    372 F.3d 588 (3d Cir. 2004)..................................................................................9

*Photogen, Inc. v. Wolf*,
    No. 00 C 5481, 2001 WL 477226 (N.D. Ill. May 7, 2001) ......................................9

*Smith v. Lucent Techs., Inc.*,
    No. 02-0481, 2004 U.S. Dist. LEXIS 4074 (E.D. La. Mar. 15, 2004) ....................7

*Steel Dynamics, Inc. v. Big River Zinc Corp.*,
    No. 1:06-CV-00110, 2006 WL 1660599 (N.D. Ind. June 9, 2006).........................9

## OTHER

*In re LLRice 601 Contamination Litig.*, Docket No. 1811 (J.P.M.L. Dec. 19, 2006),
*available at* http://www.jpml.uscourts.gov/Pending_MDLs/Miscellaneous/MDL-
1811/MDL-1811-TransferOrder.pdf...............................................................................13

## INTRODUCTION

Plaintiffs repeatedly accuse Monsanto of trying to "have it both ways." Pls.' Opp'n Br. 2, 18. Yet Plaintiffs' opposition is a study in contradiction.

- Plaintiffs' complaints allege that Monsanto imposed an unlawful tying arrangement by requiring "growers to sign a technology license, Grower's Agreement and Technology Use Agreement ('TUA') that effectively mandates that they use only Roundup herbicides on Roundup Ready crops." Pullen Compl. ¶ 86; Wade Compl. ¶ 88. But Plaintiffs' opposition brief asserts that these lawsuits are not, in the language of the forum selection clause in their Technology Agreements, "disputes arising out of or connected in any way with the agreement and the use of the seed or the Monsanto technologies." Pls.' Opp'n Br. 10; Def.'s Mem. Ex. B.

- Plaintiffs seek to enjoin Monsanto from imposing conditions on "growing or using seed containing Monsanto's glyphosate-tolerant traits (the tying product or products)." Pullen Compl. ¶ 97; Wade Compl. ¶ 99. But they contend in their opposition brief that they "do not assert any claim for relief, contractual or otherwise, concerning their purchases of seed covered by the Technology Agreements." Pls.' Opp'n Br. 9.

Plaintiffs agreed by contract to bring these suits in St. Louis, and they cannot extinguish that obligation by ignoring the allegations in their own complaints.

Nor can Plaintiffs evade their contractual commitment by creating artificial limitations on the scope of the forum clause. That their claims seek damages based on alleged overcharges for glyphosate and not seed, for instance, does not foreclose

application of the forum selection clause. On the contrary, the centerpiece of their glyphosate claims and the target of their injunctive relief is the agreement by which Monsanto licensed use of its seed traits. Moreover, even if Plaintiffs were correct – which they are not – that the Third Circuit enforces forum clauses only when the claims are completely "dependent on the contractual relationship between the parties," Pls.' Opp'n Br. 13, the fact is that the claims here *do* depend on the contract. Their Technology Agreement is the vehicle through which the alleged anticompetitive scheme was achieved, and courts repeatedly have applied the forum clause to antitrust conspiracy claims similar to those here.

Plaintiffs' arguments that the forum selection clause is unenforceable as a matter of law likewise fail. The well-established law in this Circuit enforces such contractual commitments absent compelling reasons to forbear. Here, there are no reasons, compelling or otherwise, to override the contract. Court after court has held that the very forum selection clause at issue here is valid. Court after court has found that it is reasonable. Court after court has required growers challenging Monsanto's marketing of genetic traits to proceed in St. Louis.

Plaintiffs cannot escape these holdings by asserting that if the forum clause applies to these claims, so too must another provision of the Technology Agreement that limits remedies for losses *"resulting from the use or handling of seeds* containing Monsanto technology." Def.'s Mem. Ex. B (emphasis added). This result as to the separate remedies clause, Plaintiffs contend, would be unconscionable, invalidating the entire Agreement. This claim is contrived. The remedies clause is not at issue here. On its face, it is narrower than the forum selection clause, which covers *"all claims and*

2

*disputes arising out of or connected in any way* with the agreement and the use of the

seed *or the Monsanto technologies.*" Def.'s Mem. Ex. B (emphasis added).  Monsanto

has not contended that the remedies clause limits the damages available under the

antitrust laws, and it does not do so here.

Finally, Plaintiffs' argument concerning the supposed comparative convenience

of this forum is irrelevant.  In the Third Circuit, a forum selection clause should be

enforced unless it would "result in litigation in a jurisdiction so seriously inconvenient as

to be unreasonable." *E.g., Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d

190, 202 (3d Cir. 1983), *abrogated on other grounds, Lauro Lines S.R.L. v. Chasser*, 490

U.S. 495 (1989).  Moreover, Plaintiffs are from Iowa and Mississippi and have no

connection to Delaware.  They cannot convincingly tout this jurisdiction as more

convenient and economical compared with St. Louis,[1] where Monsanto is located and

multiple federal antitrust cases, all putative class actions involving genetically modified

seed issues, are pending.

This Court therefore should enforce the forum selection clause and dismiss

Plaintiffs' complaints.

## ARGUMENT

### I.   THE FORUM SELECTION CLAUSE COVERS THESE CASES

The forum selection clause in the Technology Agreement specifies the federal or

state court in St. Louis, Missouri as the "sole and exclusive jurisdiction" for "*all* claims

and disputes *arising out of or connected in any way* with this Agreement and the use of

the seed or the Monsanto technologies . . . ." Def.'s Mem. Ex. B (emphasis added).  The

---

[1]   Des Moines, Iowa and Jackson, Mississippi are 273 and 437 miles, respectively,
from St. Louis, compared with 954 miles and 964 miles, respectively, from Wilmington.

complaints here charge that provisions of the Technology Agreement furthered the

alleged anticompetitive scheme. Pullen Compl. ¶ 86; Wade Compl. ¶ 88 (Monsanto

requires "growers to sign a technology license, Grower's Agreement and Technology Use

Agreement ('TUA') that effectively mandates that they use only Roundup herbicides on

Roundup Ready crops."); Pullen Compl. ¶ 92; Wade Compl. ¶ 94 (Monsanto's

"anticompetitive conduct including its exclusionary licensing agreements with . . .

growers . . . has unlawfully restrained trade and maintained its monopoly in the market

for glyphosate herbicides."). The Technology Agreement, Plaintiffs allege, effects a

tying arrangement and sustains a monopoly, which Plaintiffs seek to enjoin. Pullen

Comp. ¶¶ 90, 97; Wade Compl. ¶¶ 92, 99. Indeed, the complaints make clear that the

obligations imposed and benefits conferred by the Technology Agreement are "critical"

to growers and central to their claims:

> [T]o induce growers to buy the significantly more
> expensive biotechnology seeds, Monsanto *included as an*
> *inherent component of the Tech Fee and patent/technology*
> *license the grower pays*, a crop protection program
> pursuant to which Monsanto agreed to waive the Tech Fee
> for replacement seeds if the crop fails within the first 60
> days of planting. Because, as alleged earlier, the Tech Fee
> constitutes a substantial component of the grower's seed
> costs (up to 70%), *the crop protection program was and*
> *still is a critical factor in a grower's decision to use seed*
> *with biotechnology seed traits*. Significantly, Monsanto's
> crop protection program is not otherwise available and
> cannot be purchased independently by any grower, in large
> part because *Monsanto has exclusive control over its*
> *patented seed trait technology, and thus Monsanto has the*
> *sole ability to reward or punish growers for their herbicide*
> *choices by altering how much, if any, the growers have to*
> *pay for Monsanto's seed licenses*. Thus, Monsanto is using
> its monopoly control over various biotechnology *seed* traits
> to reward or punish growers depending on whether they use
> Roundup or a competing manufacturer's glyphosate
> herbicide.

4

Pullen Compl. ¶88; Wade Compl. ¶ 90 (emphasis added). By its terms, then, the forum selection clause applies to Plaintiffs' claims.

That Plaintiffs bring antitrust, rather than contract claims does not remove these cases from the purview of "all claims" or somehow sever their connection to the Agreements they attack. Courts in the Third Circuit have applied similar forum selection clauses to federal antitrust claims. In *Nascone v. Spudnuts, Inc.*, for example, the Third Circuit dismissed a plaintiff's appeal of a district court's decision to transfer an antitrust action, relying on a forum selection clause in the franchise agreement that the district court found reasonable in scope and content. 735 F.2d 763 (3d Cir. 1984). Similarly, in *Homeware, Inc. v. Kidde, Inc.*, the Court found that antitrust claims fell within the relevant forum selection clause because the antitrust "dispute arises from or is related to the terms of the distributorship agreement or the relationship of the parties to the agreement and, thus, is the kind of dispute which plaintiff undertook to submit to a Michigan court." No. 86-3914, 1987 WL 5714, at *2 (E.D. Pa. Jan. 21, 1987); *see also Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988) (if the factual basis of a non-contractual claim lies in the contractual business relationship between the parties, then the claim may be deemed to relate to the parties' contract).

Moreover, as explained in Monsanto's opening brief, courts repeatedly have applied the forum selection clause at issue here in antitrust actions advancing allegations similar to Plaintiffs' claims. *See* Def.'s Mem. 8-9 n.5; *Blades v. Monsanto Co.*, No. 00-CV-4034-DRH, 2001 WL 775980, at *4 (S.D. Ill. Jan. 3, 2001) (enforcing forum selection clause in antitrust case and transferring case to Missouri); *Massey v. Monsanto*

5

*Co.*, No. 299CV218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000) (holding forum selection clause valid, binding and enforceable in antitrust case).

Nor does it matter that Plaintiffs address the alleged impact of Monsanto's conduct in the purported market for glyphosate. Their claims are still "connected in any way with" the grower's licenses to use Monsanto's seed trait technologies.[2] In fact, they are more than just "connected." Plaintiffs allege that the terms of those licenses are illegal, that Monsanto imposes improper conditions on its licensees, and that these points are "critical." Pullen Compl. ¶ 88; Wade Compl. ¶ 90. Plaintiffs admit as much when, in arguing about judicial economies, they assert that their allegations are "substantially identical" to the allegations in the *American Seed* case. Pls.' Opp'n Br. 19. That case seeks damages relating to *genetically modified seed. American Seed Co. v. Monsanto Co.*, C.A. No. 05-535-SLR, 2006 WL 3276831, at *1-5 (D. Del. Nov. 13, 2006).[3]

---

[2]    Plaintiffs' argument that the forum clause applies only to claims that are connected in any way to the Agreement *and the use of seed* misreads the contract. *See* Pls.' Opp'n Br. 10. Plaintiffs' premise is that the Agreement defines "Monsanto technologies" as "seed," and thus when the forum clause refers to use of the seed "or Monsanto technologies," it really covers only use of seed. In fact, the Agreement indicates that the word "seed" will refer to "*seeds containing* Monsanto technologies." Under no plausible manipulation of English can it be argued that the Agreement equates "Monsanto technologies," genetic traits, with the seeds in which they are contained. Indeed, if the word "seed" were interchangeable in the Agreement with "Monsanto technologies," many sections would be nonsensical. The phrase "seed containing Monsanto technologies" would translate to "seed containing seed." The reference in the forum clause to the "use of seed or Monsanto technologies," would translate to the "use of seed or seed." That Plaintiffs resort to such a strained interpretation of clear contractual language signals the weakness of their argument.

[3]    Plaintiffs cannot dispute that the language of the forum selection clause here is mandatory, and unlike the permissive clause this Court found did not require transfer of *American Seed. See* Def.'s Mem. Ex. G, *American Seed Co. v. Monsanto Co.*, C.A. No. 05-535-SLR, Order (D. Del. Dec. 5, 2005); Def.'s Mem. Ex. B (designating St. Louis as "the sole and exclusive" jurisdiction and stating that "Any lawsuit *must* be filed in St. Louis, Mo.").

Plaintiffs also argue that their claims "extend beyond" the Technology Agreement and therefore fall outside the Agreement's scope. Pls.' Opp'n Br. 13-14. To begin with, the Third Circuit, in *Coastal Steel*, did not hold that a forum selection clause could only cover claims dependent on the contract in which it appeared. Rather, the Court held that this connection was required *by the forum clause there*, which said that, "These conditions," that is, the ones in the contract, "shall be determined by the English Courts of Law." *Coastal Steel*, 709 F.2d at 193. By contrast, the forum clause here applies to "*all* claims and disputes *arising out of or connected in any way* with this Agreement and the use of the seed or the Monsanto technologies . . . ." Def.'s Mem. Ex. B (emphasis added).

The other cases cited by Plaintiffs are facially inapplicable here. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 293 (3d Cir. 1994) (agreement with forum clause had been rescinded, and operative agreement did not have one); *Jayson Co. v. Vertical Mkt. Software & Vertical Software Servs.*, No. 05-3883, 2006 U.S. Dist. LEXIS 30638, at *17 (D. N.J. May 18, 2006) (parties entered multiple contracts, and dispute did not arise from the contract containing the forum clause); *Smith v. Lucent Techs., Inc.*, No. 02-0481, 2004 U.S. Dist. LEXIS 4074, at *39, *50 (E.D. La. Mar. 15, 2004) (recognizing that dispute need not arise from contract at issue, but finding that all misrepresentations alleged related to purchase agreement, not finance agreement with forum clause).[4]

---

[4]    Plaintiffs' remaining cases do not reflect the approach of the Third Circuit in favor of enforcing forum agreements, and are inapposite for other reasons as well. *Farmland* followed the policy then applicable in Missouri disfavoring forum clauses, and dealt with fraud relating to the formulation of a fiduciary contract. *Farmland Indus., Inc. v. Frazier-Parrot Commodities, Inc.*, 806 F.2d 848, 851 (8th Cir. 1986) (when a "contract

Footnote continued on next page

As a matter of law, policy and logic, there is no reason parties to a contract should be barred from agreeing on a forum for "any disputes," as opposed to only those disputes dependent on the contract in which the clause appears. Indeed, to hold otherwise would allow plaintiffs to evade contractual obligations by artful pleading. *Coastal Steel*, 709 F.2d at 203. ("If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading."). In any event, as noted, all the Plaintiffs' claims funnel through the Technology Agreement. For example, Plaintiffs attack conduct by Monsanto purportedly designed to achieve a monopoly in genetically modified seeds. Pullen Compl. ¶¶ 58-76; Wade Compl. ¶¶ 60-78. But the alleged impact of that conduct in this case was to enable Monsanto to impose restrictions on growers through the Technology Agreement. But-for the alleged restrictions in that Agreement, they say, Plaintiffs could have avoided overcharges on Roundup herbicide.

Finally, Plaintiffs seek to evade the forum clause by pointing out that two of the Mississippi plaintiffs grow cotton – along with soybeans and corn – and that the forum selection clause contains an exception for cotton claims. Therefore, Plaintiffs reason, no claims advanced by *any* of the Plaintiffs could be subject to the forum clause. Plaintiffs are wrong.

---

Footnote continued from previous page
[is] tainted by fraud, the person defrauded cannot be held to the contractual forum selection clause"); *see also Armco Inc. v. North Atlantic Ins. Co.*, 68 F. Supp. 2d 330, 339 (S.D.N.Y. 1999) ("This cause of action does not arise out of the Sales Contract itself, but rather out of the . . . negotiation of the contract."). Moreover, the court in *Farmland* found the alleged scheme outside the scope of the forum clause principally because it involved parties not signatories to the agreement containing the forum clause. *Farmland*, 806 F.2d at 852; *see also Armco*, 68 F. Supp. 2d at 338-39 (noting that dispute involved individuals not signatories to agreement containing forum clause). Here, Plaintiffs all entered the subject contracts, and they do not allege fraud in the inducement.

None of the Plaintiffs grow only cotton, and two of the four Plaintiffs – including the only Plaintiff in *Pullen Seeds* – do not claim to grow cotton at all. The cotton exception is irrelevant to the two Plaintiffs who do not grow that crop. As for the other two, the forum clause excepts cotton claims because they may be subject to arbitration. Plaintiffs who grow soybean and corn cannot defeat a valid forum selection clause by adding other claims that may be subject to an exception – in particular, claims that may not proceed in court at all.[5]

Beyond that, courts repeatedly have enforced forum selection clauses, even against non-parties to the contract, where claims not subject to the clause are intertwined with claims that are. *Steel Dynamics, Inc. v. Big River Zinc Corp.*, No. 1:06-CV-00110, 2006 WL 1660599, at *8 (N.D. Ind. June 9, 2006) (despite the lack of a forum selection clause with respect to one contract, "the circumstances here warrant that the disputes arising under the two agreements be heard in the same forum, because the agreements are 'largely intertwined.'"); *Photogen, Inc. v. Wolf*, No. 00 C 5841, 2001 WL 477226, at *2-4 (N.D. Ill. May 7, 2001) (disputes arising from employment agreement and confidential disclosure agreement, which were silent as to forum selection, had to be heard in the forum the parties selected in a research agreement, because "the claims are largely intertwined."); *see also McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1303 (M.D. Ga. 2003) (forum selection clause applied even to a non-party because it was "foreseeable" that claims of non party would relate to other claims subject to the clause). The argument for enforcing the clause is far stronger here, where all the Plaintiffs not only are parties to

---

[5]    *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597-98 (3d Cir. 2004) (defendant that moved to dismiss on threshold forum issues did not waive right later to move to dismiss for failure to state a claim based on arbitration or other grounds not expressly waived under Fed. R. Civ. P. 12(h)(1)).

the contract but assert claims as part of the same cause of actions that are subject to the forum selection clause.

The Technology Agreement is in plain English. "All claims" includes the ones Plaintiffs advance here. "Any lawsuit" includes these cases.

## II.    PLAINTIFFS FAIL TO OVERCOME THE PRESUMPTION THAT THE FORUM CLAUSE IS VALID AND ENFORCEABLE

A party challenging a forum selection clause "has a particularly high burden." *Fleming & Hall, Ltd. v. Cope*, 30 F. Supp. 2d 459, 463 (D. Del. 1998). The Third Circuit has held that "a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement established (1) that it is the result of fraud or overreaching; (2) that enforcement would violate a strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in litigation so seriously inconvenient as to be unreasonable." *E.g., Coastal Steel*, 709 F.2d at 202. Plaintiffs do not carry this burden.

First, Plaintiffs do not allege that the Technology Agreement was the result of fraud or overreaching.

Second, Plaintiffs fail in their attempt to contrive some public policy argument based on a separate remedies provision in the Technology Agreement. In particular, Plaintiffs assert that the remedies provision of the Agreement would preclude them from recovering antitrust damages and is therefore unconscionable and against public policy. Contrary to Plaintiffs' straw man argument, the provision limiting damages by its terms relates to the "use or handling of seed" and does not apply to Plaintiffs' antitrust claims. Thus, the "unconscionable" outcome that Plaintiffs warn against is not called for by the

contract, has not happened in other antitrust cases enforcing the forum clause, and will not happen here.

It is black letter law that courts seek to avoid a reading of a contract that would render it illegal. Here, if this Court reads both the forum selection and the use/handling limitation of remedies as written, no public policy issue arises. But if this Court were to read the forum clause literally while inflating the plain language of the remedies clause, as Plaintiffs urge, a public policy issue might arise. As the Supreme Court stated in the *Howard v. Illinois Cent. R.R. Co.*, 207 U.S. 463, 502 (1908), "To state the proposition is to refute it."

By its terms, the forum selection clause is broader than the remedies clause. The remedies clause is a standard contract provision that limits "any and all losses, injury or damages resulting from the use or handling of seed containing Monsanto technology." Def.'s Mem. Ex. B. Thus, while the forum clause applies to "all claims and disputes," the remedies clause only covers losses, injury or damages. While the forum clause encompasses such disputes if they are "connected in any way" with the Technology Agreement and "use of Monsanto technologies," the remedies clause requires a causal link with the "use or handling of seed" containing Monsanto technologies. While the forum clause extends to "any lawsuit," the remedies clause provides a list, not exclusive but illustrative, of the types of claims it covers, "claims based in contract, negligence, product liability, strict liability, tort otherwise." Plaintiffs thus ignore the plain language of both provisions. It simply does not follow that if the forum clause applies in antitrust cases, the remedies clause, specifically limited to losses resulting from the use or handling of seeds, must apply as well. Indeed, Monsanto has successfully enforced the

11

forum clause in antitrust litigation, but has not argued, ***and does not argue here***, that the remedies clause limits antitrust damages. *See Blades v. Monsanto*, No. 00-CV-4034-DRH, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001); *Massey v. Monsanto Co.*, No. 299CV218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000).[6]

Third, Plaintiffs have not met their burden of showing that enforcement of the forum selection clause would "result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *E.g.*, *Coastal Steel*, 709 F.2d at 202. Indeed, Plaintiffs do not even attempt to meet this standard. Instead, they allege that litigation in this Court would be more convenient and further judicial economy because this Court heard the *American Seed* case. Even if these Iowa and Mississippi Plaintiffs had some connection with this District – which they do not – comparative convenience is not sufficient to override the parties' contract. *See id.*; *Hays and Company v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1162 (3d Cir. 1989) ("concerns about delay and cost in the enforcement of a forum selection clause are not alone sufficient to overcome the policy favoring enforcement of such clauses.").

In any event, dismissing the cases and allowing Plaintiffs, should they choose, to refile them in St. Louis would not hinder judicial economy. The Eastern District of Missouri has substantial experience with the issues and technologies in this case. Aside from presiding over the 13 putative antitrust class actions upon which the present cases

---

[6]     Even assuming that the remedies clause applied to antitrust damages and were found unconscionable, that would not affect the enforceability of the forum clause. The Technology Agreement clearly states, "If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect." Def.'s Mem. Ex. B. Indeed, in *Monsanto Co. v. McFarling*, the Court found a separate liquidated damages clause in the Technology Agreement unenforceable, 363 F.3d 1336 (Fed. Cir. 2004), after finding the forum selection clause enforceable. *Monsanto Co. v. McFarling*, 302 F.3d 1291 (Fed. Cir. 2002).

were based (*see* chart attached to Monsanto's opening brief as Ex. A), the Eastern District

of Missouri repeatedly has considered the Technology Agreement. In addition, that

District recently was designated as the forum for multidistrict litigation on cases

involving genetically modified rice. *See In re LLRice 601 Contamination Litigation*,

Docket No. 1811 (J.P.M.L. Dec. 19, 2006), *available at*

http://www.jpml.uscourts.gov/Pending_MDLs/Miscellaneous/MDL-1811/MDL-1811-

TransferOrder.pdf. Plainly, this Court has such experience and expertise as well. But the

contracts here designate Missouri. Far from making the parties' choice of forum

unreasonable, factors of convenience and judicial economy point toward Missouri.

## CONCLUSION

Plaintiffs agreed to bring suits like these in St. Louis. Those agreements are valid

and enforceable. The Court should hold Plaintiffs to their contractual commitments and

dismiss the Complaints.

OF COUNSEL:

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Dated: January 12, 2007
772322 / 30803

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
        Richard Horwitz (#2246)
        David E. Moore (#3938)
        Hercules Plaza, 6th Floor
        P.O. Box 951
        Wilmington, DE 19801
        (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 12, 2007, the attached document was

hand delivered to the following persons and was electronically filed with the Clerk of the Court

using CM/ECF which will send notification to the registered attorney(s) of record that the

document has been filed and is available for viewing and downloading:

Jeffrey S. Goddess
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899

I hereby certify that on January 12, 2007, I have sent by Electronically Mailed the

foregoing document to the following:

Noah H. Silverman
Bruce E. Gerstein
Joseph Opper
Garwin Gerstein & Fisher LLP
1501 Broadway, Suite 1416
New York, NY 10036
nsilverman@garwingerstein.com
bgerstein@garwingerstein.com
jopper@garwingerstein.com

Adam M. Moskowitz
Tucker Ronzetti
David M. Buckner
Kozyak Torpin & Throckmorton, P.A.
2525 Ponce de Leon, 9th floor
Miami, FL 33134
AMM@KTTLAW.COM
TR@KTTLAW.COM
DMB@KTTLAW.COM

/s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

763267 / 30803

# Exhibit D

# 2007 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(Limited Use License)*

PLEASE MAIL THE SIGNED 2007 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO: Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Agreement you must be the operator/grower of all fields that will grow plants from Seed you obtain containing Monsanto Technologies (defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, and individuals and entities having an ownership interest in any entities for which you obtain Seed, and that each Monsanto Company has not barred any of those individuals or entities from obtaining this limited-use license from Monsanto Technologies. Your name must be filed in and must match the signature below. This Monsanto Technology/Stewardship Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's home office in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind from Monsanto Technologies.

Full Grower's Name _____ Dr. ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Suffix (Sr. Jr. II, III)___ Farm Business Name

Business Address (as listed with the FSA) _____ Business City

State___ Zip___ Area Code___ Business Phone___ Fax

### PRIMARY SEED SUPPLIER

Business Name

Area Code___ Phone___ City___ State___ Zip

Form Number **60**

### THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #: _____ Batch #: _____ Date:

This Monsanto Technology/Stewardship Agreement is entered into between you (Grower) and Monsanto Company (Monsanto) and consists of the terms on this page and on the second page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® Soybeans, YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Rootworm with Roundup Ready® Corn 2, YieldGard® Plus corn, YieldGard® Plus with Roundup Ready® Corn 2, Roundup Ready® Corn 2, Roundup Ready® Corn Borer with Roundup Ready® Corn 2, Bollgard® cotton, Bollgard® cotton with Roundup Ready® cotton, Bollgard II® cotton, Bollgard II® with Roundup Ready® cotton, Roundup Ready® Flex cotton, Bollgard II® with Roundup Ready® Flex cotton, Bollgard® with Roundup Ready® Flex cotton, Mavera™ High Value Corn with Lysine, Vistive™ Soybean, Roundup Ready® Sugarbeets, Roundup Ready® Canola, and Roundup Ready® Alfalfa (Monsanto Technologies). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the Monsanto Technologies.

**GENERAL TERMS:**

Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide (TUG). To obtain additional copies of the TUG, contact Monsanto at 1-800-768-6387 or go to www.farmsource.com. Once effective, this agreement will remain in effect until either Grower or Monsanto chooses to terminate the Agreement. Information regarding new and existing Monsanto Technologies, including any additions or deletions to the U.S. patents licensed under this agreement, and any new terms will be mailed to you each year. Continuing use of Monsanto Technologies after receipt of any new terms constitutes Grower's agreement to be bound by the new terms. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**GROWER RECEIVES FROM MONSANTO COMPANY:**

- A limited use license to purchase and plant seed containing Monsanto Technologies ("Seed") and apply Roundup agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready crops. Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement and for spring crops in a separate use agreement.
- Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower, under applicable patents owned or licensed by Monsanto, to use Monsanto Technologies subject to the conditions listed in this Agreement. This license does not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States. Grower is not authorized to transfer Seed to anyone outside of the U.S.
- Enrollment for participation in Roundup Rewards® program.
- A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, alfalfa, or canola crops for have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup agricultural herbicides or other glyphosate herbicides labeled for use on these crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop to control volunteer Roundup Ready Corn 2 in Grower's crops for the 2007 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

**PLEASE MAIL THE SIGNED 2007 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141. This Monsanto Technology/Stewardship Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's home office in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**UNITED STATES PATENTS:**

The licensed U.S. patents include: for YieldGard® Corn Borer corn — 5,484,956; 5,352,605; 5,424,412; 5,859,347; 5,593,874; 6,180,774; 6,331,665; for YieldGard® Corn Rootworm corn — 5,110,732; 6,174,724; 5,484,956; 5,352,605; 5,023,179; 6,063,597; 6,331,665; 6,501,009; for YieldGard® Plus corn — 5,023,179; 5,352,605; 5,484,956; 5,424,412; 5,859,347; 5,593,874; 6,063,597; 6,174,724; 6,331,665; for Roundup Ready® Corn 2 — 4,940,835; 5,188,642; 5,359,470; 5,196,525; 5,310,938; 5,164,316; 5,352,605; 5,554,798; 5,593,874; 5,859,347; 5,424,412; 5,633,435; 5,804,425; 5,641,876; 6,825,400; 5,717,084; 5,728,925; 6,025,545; for Roundup Ready® corn — 4,940,835; 5,188,642; 6,025,545; 5,554,798; 6,040,497; 5,628,806; 5,717,084; 5,728,925; 6,083,878; for YieldGard® Corn Borer with Roundup Ready® Corn — 5,484,956; 5,352,605; 5,424,412; 5,859,347; 5,593,874; 6,331,665; 4,940,835; 5,188,642; 5,359,470; 5,196,525; 5,310,938; 5,164,316; 5,554,798; 5,633,435; 5,804,425; 5,641,876; 5,717,084; 5,728,925; 6,025,545; for Roundup Ready® Soybeans — 4,940,835; 5,188,642; 5,352,605; 5,593,892; 5,530,196; 5,717,084; 5,728,925; 5,804,425; for Roundup Ready® cotton — 5,633,435; 5,352,605; 5,530,196; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 5,804,425; 6,753,463; for Bollgard II® cotton — 6,489,542; 5,359,142; 5,322,938; 5,196,525; 5,464,316; 6,174,724; 5,880,275; 5,159,135; 6,506,559; 5,743,477; 5,880,275; 5,804,693; for Bollgard® with Roundup Ready® cotton — 5,633,435; 5,352,605; 5,530,196; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 5,804,425; 6,753,463; for Bollgard II® with Roundup Ready® cotton — 6,489,542; 5,359,142; 5,322,938; 5,196,525; 5,464,316; 6,174,724; 5,880,275; 5,159,135; 6,506,559; 5,743,477; 5,880,275; 5,804,693; 5,633,435; 5,352,605; 5,530,196; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 5,804,425; 6,753,463; for Roundup Ready® Flex cotton — 6,060,640; 6,174,724; 5,880,275; 5,159,135; 6,506,559; 5,743,477; 5,804,693; 5,633,435; 5,352,605; 5,530,196; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 5,804,425; 6,753,463; for Bollgard® with Roundup Ready® Flex cotton — 6,489,542; 5,359,142; 5,322,938; 5,196,525; 5,464,316; 6,174,724; 5,880,275; 5,159,135; 6,506,559; 5,743,477; 5,880,275; 5,804,693; 5,633,435; 5,352,605; 5,530,196; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 5,804,425; 6,753,463; for Bollgard II® with Roundup Ready® Flex cotton — 6,489,542; 5,359,142; 5,322,938; 5,196,525; 5,464,316; 6,174,724; 5,880,275; 5,159,135; 6,506,559; 5,743,477; 5,880,275; 5,804,693; 5,633,435; 5,352,605; 5,530,196; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 5,804,425; 6,753,463; for YieldGard® Corn Borer with Roundup Ready® Corn 2 — 5,484,956; 5,352,605; 5,424,412; 5,859,347; 5,593,874; 6,180,774; 6,331,665; 4,940,835; 5,188,642; 5,359,470; 5,196,525; 5,310,938; 5,164,316; 5,554,798; 5,593,874; 5,633,435; 5,804,425; 5,641,876; 6,825,400; 5,717,084; 5,728,925; 6,025,545; for Mavera™ High value corn with lysine — 6,395,974; for tank mix 6,239,072.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate, the active ingredient in Roundup® agricultural herbicide. Roundup agricultural herbicides will kill crops that are not tolerant to glyphosate. Roundup, Roundup Ready, YieldGard, YieldGard Corn Borer and Design, YieldGard Rootworm and Design, YieldGard Plus and Design, Bollgard, Bollgard II, Roundup Rewards, Vistive, Roundup Rewards, Grow the Feed, Not the Weeds., and Monsanto Imagine and the Vine Design are trademarks of Monsanto Technology LLC. Mavera is a trademark of Renessen LLC.



**GROWER AGREES:**

- To direct grain produced from corn containing trait stacks (that include the Roundup Ready Corn 2 and/or YieldGard Rootworm trait(s)) to appropriate markets as necessary.
- If growing Roundup Ready Alfalfa to direct any product produced from a Roundup Ready Alfalfa crop or seed, including hay and hay products, only to those countries where regulatory approvals have been granted, and not to plant Roundup Ready Alfalfa for the production of sprouts. Refer to the Technology Use Guide for additional information.
- To accept and continue the obligations of this Monsanto Technology Stewardship Agreement as they are hand purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land, and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology Stewardship Agreement and they must have or obtain their own Monsanto Technology Stewardship Agreement.
- To implement an Insect Resistance Management program as specified in the applicable Bollgard/Bollgard II cotton and YieldGard corn sections of the most recent Technology Use Guide (TUG) and Insect Resistance Management (IRM) guides and to cooperate and comply with Insect Resistance Management programs.
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop. Not to save any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting other than to a Monsanto licensed seed company.
- Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
- To plant Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed company or must sell or use as commodity grain all of the Seed produced pursuant to a Seed production agreement. Grower shall NOT plant any Seed containing patented Monsanto Technologies to produce any seed or breeding, research, or generation of herbicide registration data.
- To use on Roundup Ready crops only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready gene (see TUG for details on authorized non-selective products). Use of any selective herbicides labeled for the same crop without the Roundup Ready gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROPS). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROPS). ALL QUESTIONS AND CONCERNS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
- To read and follow the applicable sections of the TUG, which is incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG as it may be amended from time to time.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto or from a licensed company's authorized dealer.
- To pay all technology fees due to Monsanto that are a part of, associated with the Seed purchase price or that are invoiced for the seed.
- Upon written request, to allow Monsanto to review the Farm Service Agency crop reporting information on any land farmed by Grower including Summary Acreage History Report, Form 578 and corresponding aerial photographs, FSA Management Agency claim documentation, and deplete/reseller invoices for seed and chemical transactions.
- To allow Monsanto to examine and copy any records and receipts that could be relevant to Grower's performance of this Agreement.

**GROWER UNDERSTANDS:**

- Commodity Markets: Grain/commodities harvested from YieldGard Plus corn, YieldGard Plus with Roundup Ready Corn 2, YieldGard Rootworm with Roundup Ready Corn 2, YieldGard Corn Borer with Roundup Ready Corn 2, and Roundup Ready Canola are approved for U.S. food and feed use but not yet approved in certain export markets where approval is not certain to be received before the end of 2007. As a result, Grower must direct those grain/commodities to the following approved market options: feeding on farm, use in domestic feed lots, elevators that agree to accept the grain, or other approved uses in domestic markets only. Go to www.biotechinfo.com for a list of Grain Handlers' positions on accepting transgenic corn. The American Seed Trade Association web site (www.amseed.org) includes a list of grain handlers' positions on accepting biotransgenic corn. You must complete and send to Monsanto a Market Choice® Grain Marketing Communication Plan. For additional information on grain market options or to obtain additional forms, call 1-800-768-6387.
- Regulatory requirements: Monsanto Technologies may only be used where the products have been approved for use by all required governmental agencies. For example, some Monsanto Technologies are not registered in all states. Check with your Monsanto representative if you have questions about the approval status in your state.
- Insect Resistance Management (IRM): When planting any YieldGard or Bollgard product, Grower must implement an IRM program including planting a non-B.t. refuge according to the size and distance guidelines specified in the Bollgard cotton and YieldGard corn sections of the most recent Monsanto Technology Use Guide including any supplemental amendments (collectively "TUG") and the crop specific IRM guides. Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement.
- Crop Stewardship & Specialty Crops: Refer to the section on Coexistence and Identity Preservation in the TUG for information on crop stewardship and considerations for production of identity preserved crops.
- Corn Trait Performance: All hybrids containing Monsanto corn traits (YieldGard Corn Borer corn, YieldGard Rootworm corn, YieldGard Plus corn, and Roundup Ready Corn 2) have been screened for the presence of the appropriate protein and have passed that screening prior to commercial sale. YieldGard Rootworm corn and YieldGard Plus corn hybrids have achieved industry leading success rates in excess of 99%. A small number of these hybrids may infrequently demonstrate variable levels of performance in fields and not meet grower expectations.

**MONSANTO'S REMEDIES:**

If Grower breaches this Agreement, in addition to Monsanto's other remedies, Grower's limited-use license will terminate immediately. Thereafter, Monsanto will not accept any application for a new Monsanto Technology/Stewardship Agreement unless Monsanto provides in writing an authorization specifically naming Grower. Any such purported agreement that does not contain Monsanto's express authorization (whether a license number has been issued or approved) is void. If Grower is found by any court to have breached any term of this Agreement and/or have infringed one or more of the U.S. patents listed below, Grower agrees that, among other things, Monsanto will be entitled to a permanent injunction relating Grower from making, using, selling, or offering for sale Seed. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below or otherwise to have breached this agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) their attorneys' fees and costs and other expenses incurred in enforcing rights under the contract including, but not limited to, expenses incurred in the investigation of the breach of this agreement and/or infringement of one or more of the U.S. patents listed below.

Grower accepts the terms of the following NOTICE REQUIREMENTS, LIMITED WARRANTY AND DISCLAIMER OF WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of Seed containing Monsanto Technology. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.

**NOTICE REQUIREMENTS**

As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed containing Monsanto Technologies regarding performance or non-performance of Monsanto Technologies or the Seed in which it is contained, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed in which it is contained. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety.

**LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**

Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

**GROWER'S EXCLUSIVE LIMITED REMEDY**

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED CONTAINING MONSANTO TECHNOLOGY INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at 1-800-ROUNDUP.

**GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement, or the sale or performance of the cotton Seed containing Monsanto Technology or from claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of any Grower notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI. ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**GROWER SIGNATURE & DATE REQUIRED**

_____          _____
Name                                                              Date

## 2003 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
(Limited Use License)

### FARM INFORMATION (please print)

Please complete this section with your farm business information. The individuals and entities bound by the terms of this Agreement shall include the farm business listed below as well as all individuals or entities affiliated with, related to or having an ownership in such farm business. Your name must be filled in and must match the signature below.

**Farm Business Name:** Doug Bomble Farms

**Your Name** (First/Middle/Last): Doug Dallal Slamble   ☐ Dr. ☒ Mr. ☐ Mrs. ☐ Ms.   Suffix (Jr. Sr. II, III, etc.): 

**911 Business Address:** 30736 146th St

**Business City:** Clandle   **State:** SD   **Zip:** 57434

**Area Code:** 605   **Business Phone:** 395 6988   **Area Code:** 605   **Fax:** 395 6552

**E-mail Address:** dslamblk@nvc.net

**What is your role on the farm?**
☐ Owner
☐ Owner/Oper.
☐ Operator
☐ Farm Mgr.
☐ Farm/Dir.
☐ Other
Describe: 

### PRIMARY SEED SUPPLIER

**Business Name:** REA HYBRIDS

**Area Code:** 605   **Phone:** 225 7061   **City:** Aberdeen   **State:** SD

**Form Number**
040319415

**Lic. #:** 50163778   **THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:** Batch #: 698   Date: 2-4-03

This Monsanto Technology/Stewardship Agreement is entered into between you (Grower) and Monsanto Company (Monsanto) and consists of the terms on this page and on the reverse side of this page. This Monsanto Technology/Stewardship Agreement grants you a limited license to use Roundup Ready® soybeans, YieldGard® Corn Borer corn and YieldGard® Corn Rootworm corn®, Roundup Ready® corn, YieldGard® Corn Borer with Roundup Ready® corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Bollgard® II with Roundup Ready® cotton, Roundup Ready® sugarbeets and Roundup Ready® canola (Monsanto Technologies). This Agreement also contains your stewardship responsibilities and requirements associated with the Monsanto Technologies.

**GOVERNING LAW**
This Agreement and the parties relationship shall be governed by the laws of the state of Missouri and the United States (other than their choice of law rules).

**BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER.**
Any claim or action made or asserted by a cotton Grower for any other person claiming an interest in the Grower's cotton crop against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement, or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Set 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association (AAA®)—The term "Seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be held in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/Sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/Sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results and to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitration(s) or as otherwise required by law.

**FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER.** FOR ALL OTHER CLAIMS, THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI. (any lawsuit must be filed in St. Louis, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. 1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**SIGNATURE & DATE REQUIRED** [signature] Doug Bomble   **Date:** 1-30-03

**Name:** _____

[The Agreement continues below and on the reverse side of this page.]

**YOU AGREE:**
• To channel grain produced to appropriate markets as necessary to prevent movement to markets when the grain has not yet received regulatory approval for import.
• To implement an Insect Resistance Management program as specified in the applicable Bollgard cotton and YieldGard corn sections of the most recent Monsanto Technology Use Guide (TUG) and to cooperate and comply with Insect Resistance Management programs.
• To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
• Not to supply any Seed containing patented Monsanto Technologies to any other person or entity for planting. Not to save any crop produced from this Seed for planting and not to supply Seed produced from this Seed to anyone for planting.
• Not to use or to allow others to use Seed containing patented Monsanto Technologies Seed or for crop breeding, research, generation of herbicide registration data, or seed production.
• To use on Roundup Ready crops only a Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled on the Roundup Ready crop is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROPPED. MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROPS. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
• To read and follow the applicable sections of the TUG, which is incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG as it may be amended from time to time.
• To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto or from a licensed company's authorized dealer.
• To pay any applicable technology fees for cotton, canola, and sugarbeet traits as well as the purchase price of corn and soybeans, which is in part a Monsanto royalty. (Some seed company licensees may continue to charge a technology fee to Growers on soybean Seed and corn Seed).
* Final regulatory approvals are pending for YieldGard Corn Rootworm and Bollgard II. These products are not currently registered with the U.S. Environmental Protection Agency and are not currently available for sale or commercial use. UPON APPROVAL, THIS MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT SIGNED USE LICENSE WILL BE USED AND SHALL GOVERN THE TERMS AND CONDITIONS FOR THE USE OF THOSE TECHNOLOGIES.

MONSANTO

MONSANTO COPY

**YOU RECEIVE FROM MONSANTO COMPANY:**
• A limited use license to purchase and plant seed containing Monsanto Technologies ("Seed") and apply Roundup agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready crops (see TUG for details regarding authorized non-selective products). Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement.
• Enrollment in the value package called Roundup Rewards™, designed to bring increased benefits to you.
• A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup agricultural herbicides or other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop to control volunteer Roundup Ready corn in Grower's crops for the 2003 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

**YOU UNDERSTAND:**
• Channeling: Grain/commodities harvested from Roundup Ready corn, YieldGard Corn Borer with Roundup Ready corn, Roundup Ready canola and Roundup Ready sugarbeets are approved for U.S. food and feed use, but not yet approved in certain export markets where approval is not certain to be received before the end of 2003. As a result, the Grower must direct those grain/commodities to the following approved market options: feeding on farm, use in domestic feed lots, elevators that agree to accept the grain, or other approved uses in domestic markets only. The American Seed Trade Association web site (www.amseed.org) includes a list of grain handlers' positions on accepting Roundup Ready corn. For additional information on grain market options, call 1-800-768-6387.
• Regulatory approvals: Monsanto Technologies may only be used within the United States where the products have been approved for use by all required governmental agencies.
• Insect Resistance Management (IRM): When planting any YieldGard or Bollgard product, you must implement an IRM program including planting a non-IRM refuge according to the size and distance guidelines specified in the Bollgard cotton and YieldGard corn sections of the most recent Monsanto TUG including any supplemental amendments. You may lose your limited use license to use these products if you fail to achieve the IRM program required by this Agreement.
• Pollen flow: You should refer to the TUG for information on crop stewardship regarding the incidental movement of pollen to neighboring crops.
• Patent information: Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower, under applicable patents owned or licensed by Monsanto, to use Monsanto Technologies subject to the conditions listed in this Agreement. This license does not authorize you to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States.

**GENERAL TERMS:**
Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights.

If Grower violates the terms of this Agreement, in addition to other remedies, Grower's rights pursuant to this Agreement will terminate immediately, and Grower and any entity owned or controlled by Grower forfeits any right to obtain an Agreement in the future and Grower's violation may result in infringement of one or more of the patents. Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) their attorneys' fees and costs of enforcing this Agreement, if the Agreement is terminated. Grower will no longer have a right to purchase or use Seed containing Monsanto Technologies. Any obligations that arose before termination will continue in effect. In the event that Grower saves, supplies, sells or acquires Seed for planting in violation of this Agreement, Grower will be liable to Monsanto for patent infringement. In addition, Grower agrees that Monsanto will suffer damages that shall be equal to the gross revenue from such seed, gain, or fiber produced from infringing use of Seed (calculated based upon the applicable grain/commodity as of August 1st of the year in question and the USDA stated U.S. average yield for such crop in any county). Grower grows the crop for the year in question. Grower consents to Monsanto's review of Farm Service Agency crop reporting information on any land farmed by Grower including Forms 578 and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for Grower's seed and chemical transactions. Grower agrees to allow Monsanto to examine and copy any of Grower's records and receipts that could be relevant to Grower's performance of this Agreement.

Grower acknowledges that Grower has received a copy of Monsanto's TUG. To obtain additional copies of the Monsanto TUG, contact Monsanto at 1-800-768-6387. This Agreement, the TUG and existing Monsanto Technology Agreements, should Monsanto choose to terminate the Agreement. Once you enroll, information regarding new and existing Monsanto Technologies and any new terms will be mailed to you each year. Your continuing use of Monsanto Technologies after receipt of any new terms constitutes your agreement to be bound by the new terms. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of seed containing Monsanto Technology. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.

**NOTICE REQUIREMENT:**
As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed containing Monsanto Technologies regarding performance or non-performance of Monsanto Technologies or the Seed in which it is contained, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed in which it is contained. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety.

**LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**
Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

**EXCLUSIVE LIMITED REMEDY:**
THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED CONTAINING MONSANTO TECHNOLOGY (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP.

**PLEASE MAIL THE SIGNED 2003 MONSANTO TECHNOLOGY AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

The licensed U.S. patents include: for YieldGard® Corn Borer corn – 5,484,956; 5,352,605; 5,538,877; 5,538,880; 5,389,142; 5,424,412; 5,322,938; 5,164,316; 5,196,525; 5,424,412; 5,880,275; 5,859,347; 5,858,742; 5,593,874; 5,424,200; YieldGard® Corn Rootworm corn - 5,110,732; 6,174,724; 5,484,956; 5,352,605; 5,538,877; 5,538,880; 5,389,142; 5,322,938; 5,164,316; 5,196,525; 5,858,742; and 5,424,200; for Roundup Ready® corn – 4,940,835; 5,188,642; 6,083,878; for Roundup Ready® soybeans - 4,940,835; 5,188,642; 5,352,605; 5,633,435; 5,530,196; 5,717,084; 5,728,925; 5,627,061; 5,858,742 and 5,804,425; for Roundup Ready® cotton - 5,633,435; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,804,425; 6,051,753; 6,083,878; 5,717,084 and 6,083,878; for Bollgard® cotton - 5,424,200; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 5,804,425; 6,051,753; 6,083,878; 5,880,275 and 5,804,425; for Bollgard® II cotton - 5,424,200; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 5,804,425; for Roundup Ready® cotton - 5,633,435; 5,804,425 and 5,338,546; for Roundup Ready® canola - 6,051,753; 6,018,100; 5,378,619; 5,728,925; 5,276,760; 5,717,084 and 6,083,878; for Bollgard® cotton - 6,083,878 and for Roundup Ready® sugarbeets - 5,378,619; 5,164,175; 5,728,925; 5,627,061; 5,164,316; 5,196,525; 5,322,938; 5,359,142; 5,424,200; 5,352,605; 5,530,196; 4,940,835; 5,188,642; 5,717,084; 5,728,925; 6,018,100; 6,051,753; 6,083,878 and 5,804,425; for tank mix-6,239,072. Please call 1-800-ROUNDUP if you have any questions concerning this license.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup® agricultural herbicides will kill crops that do not contain the Roundup Ready® gene. Roundup®, Roundup Ready®, Bollgard®, YieldGard®, and the Vine Symbol are trademarks of Monsanto Technology LLC. Roundup Rewards™ is a servicemark of Monsanto Technology LLC © 2003 Monsanto Company. Roundup Rewards applies only to Roundup branded and other specified Monsanto agricultural herbicides.

2004 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(United We License)*

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Agreement you must be the operator/grower for all fields that will grow plants from Seed you obtain containing Monsanto Technologies (defined below). You represent that you have full authority to and do hereby bind to this Agreement all entities for which you obtain this Seed. Your name must be filed in and must match the signature below.

Grower's Name: **Donald W Whitlow**    Farm Business Name: **Century Acres**

☐ Mr. ☐ Mrs. ☐ Ms.    Suffix (Sr, Sr, II, III, etc)

Tax Business Address: **45744 Tchu PP**    Business City: **DePere**    State: **WI**    Zip: **54115**

Area Code: **920**    Business Phone: **338 2430**    Fax:

Email Address:

## PRIMARY SEED SUPPLIER

Business Name: **Johnson Hardson Coop**

Area Code: **920**    Phone: **759 7474**    City: **Bellevue**    State: **WI**

4 0 0206093

Lic. #: **50181024**    Batch #: **1399**    THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:    Date: **APR 12 2004**

This Monsanto Technology/Stewardship Agreement is entered into between you (Grower) and Monsanto Company (Monsanto) and consists of the terms on this page and on the reverse side of this page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, YieldGard® Corn Borer corn and YieldGard Rootworm® corn, Roundup Ready® corn, YieldGard Corn Borer with Roundup Ready® corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard with Roundup Ready® cotton, Bollgard II® cotton, Bollgard II with Roundup Ready® cotton, Roundup Ready® sugarbeet, Roundup Ready® canola, and Roundup Ready Alfalfa® (Monsanto Technologies). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the Monsanto Technologies.

**GOVERNING LAW:**
This Agreement and the parties relationship shall be governed by the laws of the state of Missouri and the United States (other than the choice of law rule).

**BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:**
Any claim or action made or asserted by a cotton Grower for any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology (other than claims arising under the patent laws of the United States) must be resolved by binding arbitration. The parties acknowledge that this transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, developing, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other state of the parties choice by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as shown (not to exceed). The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results shall be to be conducted without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS. THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI. ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER.**

**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. 1 ET SEQ, WHICH MAY BE ENFORCED BY THE PARTIES.**

SIGNATURE & DATE REQUIRED

Signature: *Donald Whitlow*    Date: **4/6/04**

Name    [The Agreement continues below and on the reverse side of this page.]

**GROWER AGREES:**
• To channel grain produced in appropriate markets as necessary to prevent movement to markets where the grain has not yet received regulatory approval for import.
• To implement an Insect Resistance Management program as specified in the applicable Bollgard cotton and YieldGard corn sections of the most recent Technology Use Guide (TUG) and to cooperate and comply with Insect Resistance Management programs.
• To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
• Not to supply any Seed containing patented Monsanto Technologies to any other person or entity for planting. Not to save any crop produced from this Seed for planting and not to supply Seed produced from this Seed to anyone for planting.
• Not to use or to allow others to use Seed containing patented Monsanto Technologies for crop breeding, research, generation of herbicide registration data, or Seed production (unless Grower has entered into a valid, written production agreement with a licensed seed company).
• To use an Roundup Ready crops only a Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready gene (see TUG for details on authorized non-selective products. Use of any selective herbicide labeled for the same crop without the Roundup Ready gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROPS). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROPS). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THESE COMPANIES.
• To read and follow the applicable sections of the TUG, which is incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG as it may be amended from time to time.
• To receive Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto or from a licensed company's authorized dealer.
• To pay the Seed purchase price including any applicable technology fees.
• To allow Monsanto to review the Farm Service Agency crop reporting information on any land farmed by Grower including Summary Acreage History Report, Form 578 and corresponding aerial photographs, Pick Management Agency (film documentation, and dealer/retailer invoices) for your seed and chemical transactions.
• To allow Monsanto to examine and copy any records and receipts that could be relevant to Grower's performance of this Agreement.

* Full regulatory approvals are pending for Roundup Ready Alfalfa. The products are currently expected will the US Environmental Protection Agency and is not currently provided for sale or commercialization. (USDA APPROVAL) this Monsanto Technology/Stewardship Agreement (United) may become) will be used and shall govern the terms and conditions for the advancement of actual sale).

🔵 Roundup    [logos]    Bollgard II® Bollgard®    MONSANTO

MONSANTO COPY

**GROWER RECEIVES FROM MONSANTO COMPANY:**
• A limited use license to purchase and plant seed containing Monsanto Technologies ("Seed") and apply Roundup agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready crops.
• Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement and separate use agreements, which are required for canola and alfalfa.
• Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower, under applicable patents owned or licensed by Monsanto, to use Monsanto Technologies subject to the conditions listed in this Agreement. This license does not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States.
• Enrollment in the value package called Roundup Rewards™, designed to bring increased benefits to you.
• A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup agricultural herbicides and other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop to control volunteer Roundup Ready corn in Grower's crops for the 2004 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

**GROWER UNDERSTANDS:**
• Channeling: Grain/commodities harvested from Roundup Ready corn, YieldGard Corn Borer with Roundup Ready corn, Roundup Ready canola, YieldGard Rootworm corn, and Roundup Ready sugarbeets are approved for U.S. food and feed use, but not yet approved in certain export markets where approval is not certain to be received before the end of 2004. As a result, Grower must direct those grain/commodities to the following approved market options: feeding on farm, use in domestic feed lots, elevators that agree to accept the grain, or other approved uses in domestic markets only. The American Seed Trade Association web site (www.amseed.org) includes a list of grain handlers' positions on accepting Roundup Ready corn. You must complete and send to Monsanto a Market Choices™ form. For additional information on grain market options or to obtain additional forms, call 1-800-768-6387.
• Regulatory approvals: Monsanto Technologies may only be used within the United States where the products have been approved for use by all required governmental agencies.
• Insect Resistance Management (IRM): When planting any YieldGard or Bollgard products, Grower must implement an IRM program including planting a non-Bt refuge according to the size and distance guidelines specified in the Bollgard cotton and YieldGard corn sections of the most recent Monsanto Technology Use Guide including any supplemental amendments (collectively "TUG"). Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement.
• Pollen flow: Refer to the TUG for information on crop stewardship regarding the potential movement of pollen to neighboring crops.

**GENERAL TERMS:**
Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide (TUG). To obtain additional copies of the Monsanto Technology Use Guide, contact Monsanto at 1-800-768-6387. This Agreement will remain in effect until either Grower or Monsanto choose to terminate the Agreement. Once you enroll, information regarding new and existing Monsanto Technologies and any new terms will be mailed to you each year. Your continuing use of Monsanto Technologies after receipt of any new terms constitutes your agreement to be bound by the new terms. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**MONSANTO'S REMEDIES:**
If Grower violates the terms of this Agreement, in addition to other remedies, Grower's rights pursuant to this Agreement will terminate immediately, and Grower and any entity receiving Seed from Grower are precluded from obtaining an Agreement or otherwise acquiring Seed of any brand in the future, and Grower's violation may result in infringement of one or more of the patents. Grower agrees to (pay Monsanto and the licensed Monsanto Technology provider(s) their attorneys' fees and costs of enforcing this Agreement. If the Agreement is terminated, Grower will no longer have a right to purchase or use Seed containing Monsanto Technologies. Any obligation does that arose before termination will continue in effect. In the event that Grower saves, sells or acquires Seed for planting in violation of this Agreement, Grower will be liable to Monsanto for patent infringement. In addition, Grower agrees that Monsanto will suffer damages for breach of contract, that the measure of these damages is difficult to determine, and as a result Monsanto has the right to liquidated damages in the amount that the Grower saves, supplies, sells or acquires Seed for planting in violation of this Agreement, in addition to other remedies available to recover Monsanto's losses as just compensation and not as a penalty. In the event that the Grower saves, supplies, sells or acquires Seed for planting in violation of this Agreement, in addition to other remedies available to the technology provider(s) the Grower agrees that damages will include a claim for liquidated damages which will be based on 120 times the applicable technology fee/royalty (the premium Monsanto receives for the use of Monsanto Technology) times the number of units of Seed purchased in the most recent year before each unauthorized use of Monsanto Technology. However, for Roundup Ready® soybeans, liquidated damages will be based on $150 times the number of units of Seed purchased in the most recent year before each unauthorized use of Monsanto's technology.

Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY and DISCLAIMER OF WARRANTY and EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of seed containing Monsanto Technology. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.

**NOTICE REQUIREMENT:**
As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed containing Monsanto Technologies regarding performance or non-performance of Monsanto Technologies or the Seed in which it is contained, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Seed and/or the Seed in which it is contained. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety.

**LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**
Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

**GROWER'S EXCLUSIVE LIMITED REMEDY:**
THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED CONTAINING MONSANTO TECHNOLOGY (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP.

PLEASE MAIL THE SIGNED 2004 MONSANTO TECHNOLOGY AGREEMENT TO: Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141. This Monsanto Technology Stewardship Agreement becomes effective if and when Monsanto issues the Grower a license number in St. Louis, Missouri.

The licensed U.S. patents include: for YieldGard® Corn Borer corn - 5,484,956; 5,352,605; 5,538,877; 5,538,880; 5,359,142; 5,322,938; 5,164,316; 5,196,525; 5,424,412; 5,880,275; 5,850,347; 5,593,874; 5,424,200; YieldGard Corn Rootworm corn - 5,110,732; 6,174,721; 5,484,956; 5,352,605; 5,538,877; 5,538,880; 5,359,142; 5,322,938; 5,164,316; 5,196,525; 5,888,732; and 5,424,200; for Roundup Ready® corn - 4,940,835; 5,188,642; 5,359,142; 5,196,525; 5,322,938; 5,164,316; 5,474,200; 5,858,742; 5,352,605; 5,538,877; 5,538,880; 5,554,798; 5,593,874; 5,850,347; 5,424,412; 5,933,435; 5,804,425; 5,627,061; 5,728,925; 6,083,878; for Roundup Ready® soybeans - 4,940,835; 5,188,642; 5,352,605; 5,633,435; 5,530,196; 5,717,084; 5,858,742 and 5,804,425; for Roundup Ready® cotton - 5,633,435; 5,728,925; and 5,188,642; 4,940,835; 5,804,425; 6,051,753; 6,018,100; 5,378,619; 5,627,061; 5,858,742; 6,174,721; 5,159,135; 5,004,863; 5,728,925; 5,717,084 and 6,083,878; for Bollgard® cotton - 5,424,200; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 6,174,721; 5,880,275; 5,858,742; 5,159,135; and 5,004,863; for Bollgard® with Roundup Ready® cotton - 5,633,435; 5,424,200; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 6,051,753; 6,018,100; 5,378,619; 5,627,061; 5,858,742; 6,174,721; 6,083,878; 5,159,135; 5,004,863; 5,880,275 and 5,804,425; for Bollgard® II cotton - 5,159,135; 5,004,863; 6,083,878; 5,880,275; 5,804,425; and 5,338,544; for Bollgard II with Roundup Ready® cotton - 6,480,542; 5,633,435; 5,424,200; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 6,051,753; 6,018,100; 5,378,619; 5,627,061; 5,858,742; 6,174,721; 5,159,135; and 6,083,878 ; and for Roundup Ready® sugarbeets - 5,378,619; 5,463,175; 5,776,760; 5,627,061; 5,633,435; 5,164,316; 5,196,525; 5,322,938; 5,359,142; 5,424,200; 5,352,605; 5,530,196; 4,940,835; 5,188,642; 5,717,084; 5,728,925; 6,018,100; 6,051,753; 6,083,878 and 5,804,425; for tank mix-6,239,072.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup® agricultural herbicides will kill crops that do not contain the Roundup Ready® gene. Roundup®, Roundup Ready®, Bollgard®, YieldGard®, and the Vine Symbol are trademarks of Monsanto Technology LLC Roundup Rewards™ is a servicemark of Monsanto Technology LLC © 2003 Monsanto Company. Roundup Rewards applies only to Roundup branded and other specified Monsanto agricultural herbicides.